Julia ROGERS, Plaintiff-Appellee,

v.

Leroy LOETHER et al., Defendants-
Appellants.

No. 71–1145.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1972.

Decided Sept. 29, 1972.

Edward A. Dudek, Robert D. Scott, Milwaukee, Wis., for defendants-appellants.

Patricia D. McMahon, Seymour Pinofsky, Milwaukee, Wis., for plaintiff-appellee.

Before SWYGERT, Chief Judge, STEVENS, Circuit Judge, and CAMPBELL, District Judge.[*]

STEVENS, Circuit Judge.

The question presented is whether appellant was entitled to a jury trial in an action for compensatory and punitive damages brought under § 812 of the Civil Rights Act of 1968, 42 U.S.C. § 3612.[1]

In her complaint, plaintiff alleged that the three defendants had refused to rent her an apartment because of her race.[2] She requested injunctive relief restraining defendants from renting the apartment to anyone else, money damages for her actual losses, punitive damages of $1,000, and attorney's fees.

The district court, after an extended hearing, entered a preliminary injunction. Subsequently, with plaintiff's consent, the injunction was dissolved; thereafter only plaintiff's claims for compensatory and punitive damages and attorney's fees remained. Defendants' request for a jury trial of those issues was denied, D.C., 312 F.Supp. 1008. After trial, the court found that plaintiff had suffered no actual damages but assessed punitive damages of $250; the prayer for attorney's fees was denied.

On appeal defendants contend that the finding of discrimination is clearly erroneous, that it was error to award punitive damages, and that they were entitled to a jury trial. We shall not describe the evidence of discrimination except to note that it was marginal;

---

[*] Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. Section 812 provides, in part:
 "(a) The rights granted by sections 803, 804, 805, and 806 may be enforced by civil actions in appropriate United States district courts without regard to the amount in controversy and in appropriate State or local courts of general jurisdiction. A civil action shall be commenced within one hundred and eighty days after the alleged discriminatory housing practice occurred: . .
 \* \* \* \* \*
 "(c) The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: *Provided*, That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees." 82 Stat. 88, 42 U.S.C. § 3612.

2. Section 804 of the 1968 act provides, in part:
 "As made applicable by section 803 and except as exempted by sections 803 (b) and 807, it shall be unlawful—
 "(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, or national origin." 82 Stat. 83, 42 U.S.C. § 3604.

whichever way the trial judge had ruled, his determination of that issue would not have been clearly erroneous.[3] We are also satisfied that if his finding of discrimination is accepted, an award of punitive damages was authorized by the statute notwithstanding the absence of any actual loss to the plaintiff.[4] We shall confine our analysis to the jury trial issue.

The district court held that a jury trial was not required by the Seventh Amendment[5] or by a fair interpretation of the statute.[6]

The court rejected the constitutional claim on the grounds (1) that the cause of action was created by statute and not recognized at common law; and (2) that the statutory claim invoked the equitable powers of the court and the amendment has no application to the recovery of money damages as an incident to complete equitable relief. Both propositions are supported by N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48–49, 57 S.Ct. 615, 81 L.Ed. 893.[7]

The district court also considered the award of damages in a housing discrimination case arising under the 1968 Act analogous to an award of back pay in an employment discrimination case under the Civil Rights Act of 1964 and therefore relied on cases holding that there is no right to a jury trial in such litigation.[8] In its opinion the district court placed no reliance on the argument, sometimes advanced by proponents of civil rights legislation, that allowance of a jury trial might undermine effective enforcement of the statute.[9]

Our study of the issue persuades us that (1) the constitutional right to trial by jury applies in at least some judicial proceedings to enforce rights created by statute; (2) this action for damages is "in the nature of a suit at common law";[10] (3) the nature of the claim is "legal" within the test identified in Ross

3. Defendants contend that their refusal was motivated by the obnoxious behavior of a white social worker who was helping the plaintiff find an apartment; they had offered to rent the apartment to any black tenant other than the plaintiff and offered considerable evidence of absence of racial prejudice by either themselves or other tenants in the apartment. On the other hand, plaintiff's evidence tended to indicate that negotiations proceeded smoothly until defendants learned that plaintiff was a Negro.

4. As we read the statute it does not require a finding of actual damages as a condition to the award of punitive damages. In any event, in other litigation the federal courts have held that punitive damages may be awarded without requiring an award of compensatory damages. See, e. g., Wardman-Justice Motors, Inc. v. Petrie, 59 App.D.C. 262, 39 F.2d 512, 516 (1930) ; Basista v. Weir, 340 F.2d 74, 85–88 (3rd Cir. 1965). The Basista case involved a suit against policemen for punitive damages under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

5. "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." United States Constitution, Amendment VII.

6. The opinion is reported at 312 F.Supp. 1008.

7. The district court also cited United States v. Louisiana, which holds that the Seventh Amendment is "applicable only to actions at law." 339 U.S. 699, 706, 70 S.Ct. 914, 917, 94 L.Ed. 1216.

8. Hayes v. Seaboard Coast Line R.R., 46 F.R.D. 49 (S.D.Ga.1970) ; Cheatwood v. South Central Bell Tel. & Tel. Co., 303 F. Supp. 754 (M.D.Ala.1969).

9. See, e. g., mention of such factors in Note, Jones v. Mayer: The Thirteenth Amendment and the Federal Anti-Discrimination Laws, 69 Colum.L.Rev. 1019, 1051; Comment, The Right to Jury Trial Under Title VII of the Civil Rights Act of 1964, 37 U.Chi.L.Rev. 167; Developments in the Law, Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1264. Among the cases, see Hayes v. Seaboard Coast Line R.R., 46 F.R.D. 49, 53 (S.D. Ga.1970) ; Lawton v. Nightingale, 345 F. Supp. 683 (D.C.Ohio, 1972).

10. See N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. at 48, 57 S.Ct. at 629.

v. Bernhard, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729; (4) the right to a jury trial may not be denied on the ground that the damage claim is incidental to a claim for equitable relief; (5) cases involving an award of back pay pursuant to the 1964 Act are inapplicable; and finally (6) in view of our grave doubts as to the constitutionality of a denial of the right to a jury trial and the failure of Congress expressly to indicate that the traditional procedure for litigating damage claims should not be followed, the statute should be construed to authorize trial by jury. Accordingly, we have decided to reverse.

## I.

■■ The Seventh Amendment preserves the substance of the right to a jury trial which existed under English common law when the amendment was adopted.[11] It has never been suggested that the application of the amendment is narrowly confined to such common law writs as might be enforceable in a federal court. On the contrary, since the bulk of the civil litigation in the federal judicial system involves the assertion of a federal right derived either from an act of Congress or the Constitution itself, necessarily the principal significance of the Seventh Amendment has been in such cases.[12] It is perfectly clear that the fact that a litigant is asserting a statutory right does not deprive him or his adversary of the protection of the amendment.

In Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 7 L.Ed. 732, Mr. Justice Story,

writing for the Court, rejected the contention expressed by Mr. Justice M'Lean in dissent that the amendment was inapplicable because the claim arose not under the common law but rather under the statutes of Louisiana.[13] Mr. Justice Story focused on the character of the claim as a "legal right" and eloquently described the purpose of the amendment:

"The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy. The right to such a trial is, it is believed, incorporated into, and secured in every state constitution in the union; and it is found in the constitution of Louisiana. One of the strongest objections originally taken against the constitution of the United States, was the want of an express provision securing the right of trial by jury in civil cases. As soon as the constitution was adopted, this right was secured by the seventh amendment of the constitution proposed by Congress; and which received an assent of the people so general, as to establish its importance as a fundamental guarantee of the rights and liberties of the people. This amendment declares, that 'In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact once tried by a jury shall be otherwise re-examinable in any Court of the United States, than according

11. Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 657, 55 S.Ct. 890, 79 L.Ed. 1636.

12. "The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment." Jacob v. New York City, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166.

13. "It is not strictly a common law proceeding; but a proceeding under the peculiar system of Louisiana; . . . * * * * *

"In the state of Louisiana, the principles of common law are not recognized; neither do the principles of the civil law of Rome furnish the basis of their jurisprudence. They have a system peculiar to themselves, adopted by their statutes, which embodies much of the civil law, some of the principles of the common law, and, in a few instances, the statutory provisions of other states. This system may be called the civil law of Louisiana, and is peculiar to that state." 28 U.S. at 449–450, 7 L.Ed. 732 (Mr. Justice M'Lean dissenting).

to the rules of the common law.' At this time there were no states in the union, the basis of whose jurisprudence was not essentially that of the common law in its widest meaning; and probably no states were contemplated, in which it would not exist. The phrase 'common law,' found in this clause, is used in contradistinction to equity, and admiralty, and maritime jurisprudence. . . . By common law, they meant what the constitution denominated in the third article 'law;' not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those, where equitable rights alone were recognized, and equitable remedies were administered; or where, as in the admiralty, a mixture of public law, and of maritime law and equity was often found in the same suit. Probably there were few, if any, states in the union, in which some new legal remedies differing from the old common law forms were not in use; but in which, however, the trial by jury intervened, and the general regulations in other respects were according to the course of the common law. Proceedings in cases of partition, and of foreign and domestic attachment, might be cited as examples variously adopted and modified. In a just sense, the amendment then may well be construed to embrace all suits, which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights." 28 U.S. at 445–446, 7 L.Ed. 732.

In an unbroken line of cases involving enforcement of statutory rights, the Su-preme Court has treated the right to a jury trial as a matter too obvious to be doubted. Thus, in a civil action to recover a statutory penalty for a violation of the immigration laws, the first Mr. Justice Harlan, speaking for the Court, said that the "defendant was, of course, entitled to have a jury summoned in this case." Hepner v. United States, 213 U.S. 103, 115, 29 S.Ct. 474, 479, 53 L.Ed. 720. In an action for treble damages under § 7 of the Sherman Act, Mr. Justice Holmes, also speaking for a unanimous Court, considered it plain that "the statute should not be read as attempting to authorize liability to be enforced otherwise than through the verdict of a jury in a court of common law." Fleitmann v. Welsbach Street Lighting Co., 240 U.S. 27, 29, 36 S.Ct. 233, 234, 60 L.Ed. 505. In a case alleging violation of the Safety Appliance Act of 1910, which did not expressly authorize a private remedy, the Court found an implied right to recover damages in a jury trial "according to a doctrine of the common law." Texas & Pacific Ry. v. Rigsby, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874. In a case involving an ambiguous claim for damages, either as an amount due under a contract or as a statutory claim for damages for trademark infringement, the Court held that the claim was "wholly legal in its nature however the complaint is construed" and that the "constitutional right to trial by jury" was applicable to the claim. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477, 82 S.Ct. 894, 899, 8 L.Ed.2d 44. And in an action brought under § 4 of the Clayton Act, the Court has expressly characterized the right to a jury trial as "constitutional." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510, 79 S.Ct. 948, 3 L.Ed.2d 988.[14]

14. "Since the right to a jury trial is a constitutional one, however, while no similar requirement protects trials by the court, that discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial." *Id.* at 510, 79 S.Ct. at 956.

It is of interest that in the elaborate argument presented to us in Dasho v. Susquehanna Corp., 461 F.2d 11 (7th Cir. 1972), cert. denied, 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972), in which the decision turned on the constitutional right to a jury trial in an action assert-

N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48–49, 57 S.Ct. 615, 81 L.Ed. 893, does not hold—as is sometimes assumed—that no jury trial is required in a cause of action created by statute since any such action would have been unknown to the common law and therefore beyond the reach of the Seventh Amendment. The *Jones & Laughlin* opinion expressly recognizes that the amendment is applicable not only to a suit at common law, but also to a judicial proceeding "in the nature of such a suit." The distinction drawn in the opinion is not between substantive rights derived from the common law as opposed to those created by statute; it is the difference between a proceeding "in the nature of a suit at common law" and a "statutory proceeding." [15]

The Court's reference to a "statutory proceeding" rather than to a judicial proceeding brought to redress a right created by statute is important. Cases such as Parsons v. Bedford and Fleitmann v. Welsbach Street Lighting Co. were such judicial proceedings, and their teaching is not undermined in the slightest by the *Jones & Laughlin* holding. The procedure approved by *Jones & Laughlin* was, of course, fundamentally different from a common law trial. It was administrative rather than judicial and did not invoke the original jurisdiction of a court in determining factual issues or fashioning a remedy. The initial case was not "tried" in a court of law or equity; it was "tried" in a separate *proceeding* created by statute.[16]

Here there is no statutory *proceeding*. The statute authorizes a "civil action" in the courts of the United States. The rights protected and the relief available are set forth in the statute, but the proceeding is not statutory

---

ing rights under § 10(b) of the Securities Act of 1934, none of the defendants even suggested that the statutory source of plaintiffs' claim affected their right to demand a jury.

15. The Court's entire discussion of the Seventh Amendment issue occupies less than one page of a 27-page opinion. That page includes the Court's discussion of both the historic view that no jury is required if the recovery of damages is an incident to equitable relief (a proposition discussed in part IV of this opinion) and to the statutory proceeding point. The Court said:

"The Amendment thus preserves the right which existed under the common law when the Amendment was adopted. Shields v. Thomas, 18 How. 253, 262 [59 U.S. 253, 15 L.Ed. 368]; In re Wood, 210 U.S. 246, 258 [28 S.Ct. 621, 52 L.Ed. 1046]; Dimick v. Schiedt, 293 U.S. 474, 476 [55 S.Ct. 296, 79 L.Ed. 603]; Baltimore & Carolina Line v. Redman, 295 U.S. 654, 657 [, 55 S.Ct. 890, 79 L.Ed. 1636]. Thus it has no application to cases where recovery of money damages is an incident to equitable relief even though damages might have been recovered in an action at law. Clark v. Wooster, 119 U.S. 322, 325 [7 S.Ct. 217, 30 L.Ed. 392]; Pease v. Rathbun-Jones Engineering Co., 243 U.S. 273, 279 [, 37 S.Ct. 283, 61 L.Ed. 715]. It does not apply where the *proceeding* is not in the nature of a suit at common law. Guthrie National Bank v. Guthrie, 173 U.S. 528, 537 [19 S.Ct. 513, 43 L.Ed. 796].

"The instant case is not a suit at common law or in the nature of such a suit. The *proceeding* is one unknown to the common law. It is a *statutory proceeding*. Reinstatement of the employee and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement. The contention under the Seventh Amendment is without merit." 301 U.S. at 48–49, 57 S.Ct. at 629. (Emphasis added.)

16. That this is what the Court meant when it referred to a *"proceeding . . . not in the nature of a suit at common law"* (emphasis added) is clear from the case which it cites to support the statement, Guthrie National Bank v. Guthrie, 173 U.S. 528, 19 S.Ct. 513, 43 L.Ed. 796. In that case a territorial legislature set up a special commission that did not include a jury to hear certain claims against a municipality. The claims had no legal force, but the legislature thought it equitable to provide for their payment in appropriate cases. While a court became involved in approving or disapproving the recommendations of the commission, it is clear that the *proceeding*, and not merely the right to relief, was statutory. See Developments, *supra* note 9, 84 Harv.L.Rev. at 1266–1268.

in the *Jones & Laughlin* or *Guthrie* [17] sense.[18] The issue we must consider, therefore, is whether an action for damages authorized by the Civil Rights Act of 1968 is, in the language of *Jones & Laughlin*, "in the nature of a suit at common law."

## II.

There are three reasons why this action is the kind of case which is appropriately described as in the nature of a suit at common law.

■ First, the tribunal whose jurisdiction is invoked is a court created pursuant to Article III of the Constitution. Unquestionably, congressional power to prescribe the procedures to be employed in such a court is limited by the Constitution and specifically by the Seventh Amendment.[19] The proceeding is judicial in character rather than administrative or "statutory." In all respects—at least all except the right to a jury trial if our appraisal of that right is not correct—it is clear that the procedure to be followed in this case is precisely that which is applicable to suits at common law which are tried in the federal judicial system.

Second, the remedy sought, including both compensatory and punitive damages, is the relief most typical of an action at law. If, as the scholars have consistently indicated, we should look to history for guidance in determining whether or not a claim is of the kind which is triable to a jury,[20] unquestionably the prayer for damages points to that result.[21]

17. See note 16, *supra*.

18. In making a similar analysis of *Jones & Laughlin* in the context of a damage remedy for employment discrimination under Title VII of the Civil Rights Act of 1964, one commentator drew this conclusion:

"The Court there held that a jury trial was not required in a 'statutory *proceeding*'; its concern was to protect the comprehensive administrative scheme of the NLRB, which would have been substantially destroyed if jury trials were required. The relevant distinction thus appears to be between those statutory actions which invoke an administrative process and those which do not. If the Congress makes a judgment that a comprehensive scheme of administrative adjudication is required, the Court will be willing to find that it is a 'statutory proceeding' to which the seventh amendment has no application. If, however, a statutory claim is entrusted to court decision, where there is no functional justification for not granting a jury trial, and the claim is for the type of relief normally awarded by a court of law, as would be the case in an action for compensatory damages under Title VII, the similarity to common law forms of action will require a jury trial." Developments, *supra*, note 9, 84 Harv.L.Rev. at 1267–1268.

19. In Minneapolis & St. Louis R.R. v. Bombolis the Court expressly noted that "the Seventh Amendment is controlling upon Congress." 241 U.S. 211, 219, 36 S.Ct. 595, 597, 60 L.Ed. 961.

20. The proposition that we should look to history for guidance is well settled. See 5 Moore's Federal Practice ¶ 38.11 [7]; 9 Wright and Miller, Federal Practice and Procedure, Civil § 2302; James, Civil Procedure § 8.1 at p. 338 (1965). Even the dissenters in Ross v. Bernhard agreed, 396 U.S. 531, 543 n. 1, 90 S.Ct. 733, 24 L.Ed.2d 729.

21. Damages, of course, were traditionally awarded in legal actions to compensate a plaintiff for a breach of a legal duty owed him by defendant. That duty may be prescribed by the common law (e. g., the tort law of negligence), by contract or by statute. The origin of the duty does not necessarily determine the nature of the suit. In Texas & Pacific Ry. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874, for example, the Court found an implied remedy for damages for violation of the duty placed upon defendant by the Safety Appliance Act. The case was tried to a jury.

In concluding that a jury trial was required in a suit seeking damages under the Labor-Management Reporting and Disclosure Act of 1959, the Fourth Circuit said in part:

"The right asserted is indeed one created by statute, but we do not agree that a jury trial is necessarily unavailable because the suit for damages is one to vindicate a statutory right. There is no such cleavage between rights existing under common law and rights estab-

■ Finally, the nature of the substantive right asserted, although not specifically recognized at common law, is analogous to common law rights. An English innkeeper who refused, without justification, to rent lodgings to a traveler was apparently liable in an action at law triable to a jury.[22] Refusing to rent an apartment on the false ground that an applicant is an unfit tenant, when race is the real motivation, is a species of defamation; libel and slander, of course, are common law causes of action. Discrimination might involve mental distress or other emotional harm, and the developing common law of torts recognizes a cause of action for the intentional infliction of emotional harm.[23]

We therefore conclude that a suit for damages for discrimination in the sale or rental of housing facilities is sufficiently analogous to a suit at common law to be appropriately characterized as a "legal" claim triable to a jury.

### III.

Although the full implications of the Supreme Court's decision in Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 have yet to be determined, it is clear that mere analogy to history may not be sufficient to define the scope of the Seventh Amendment. In that case the constitutional right to a jury trial was held to encompass at least some claims in litigation which historically had been the exclusive province of equity. That was a derivative action brought by a shareholder in the name of a corporation. The shareholder's standing to litigate was governed by equitable principles; the corporate claim which he asserted was, at least in part, legal.[24]

History was unquestionably relevant to the Court's analysis of the question whether a jury trial was required in such a case. But, following the lead set in *Beacon* and *Dairy Queen*, the traditional treatment of the entire litigation

lished by enacted law, where the relief sought is an award of damages." Simmons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012, 1018 (1965).

22. "Thus innkeepers, who have nowhere been described as public utilities, have from early times been subject to the obligation to receive and afford proper entertainment to every one who offers himself as a guest, if there be sufficient room for him in the inn, and no good reason for refusing him." Davies Warehouse Co. v. Brown, 137 F.2d 201, 207 (Emerg.Ct.App.1943), and cases there cited. *Davies* was reversed on other grounds, 321 U.S. 144, 64 S. Ct. 474, 88 L.Ed. 635.
See also Thomas v. Pick Hotels Corp., 224 F.2d 664, 666 (10th Cir. 1955) (common law action against innkeeper for discrimination sounds in tort) ; 43 C.J.S. Innkeepers § 9 at p. 1149.

23. At common law, an innkeeper was liable in damages for insulting or abusing his guests or indulging in any conduct resulting in unnecessary physical discomfort or distress of mind. See Odom v. East Avenue Corp., 178 Misc. 363, 34 N.Y.S.2d 312 (1942), affirmed, 264 App. Div. 985, 37 N.Y.S.2d 491 (complaint seeking damages against innkeeper for failure to serve guest in hotel restaurant because of race states common law

cause of action). Professors Gregory and Kalven have suggested that the logic of the common law development of the dignitary tort might well apply in cases of racial discrimiation. Gregory & Kalven, Cases and Materials On Torts 961 (2d ed. 1969). In addition, a racial discrimination suit might also be considered analogous to the so-called "new tort" for extreme and outrageous conduct which results in emotional harm. As to this "new tort," see Eckenrode v. Life of America Ins. Co., 470 F.2d 1 (7th Cir. 1972).

24. "In the instant case we have no doubt that the corporation's claim is, at least in part, a legal one. The relief sought is money damages. There are allegations in the complaint of a breach of fiduciary duty, but there are also allegations of ordinary breach of contract and gross negligence. The corporation, had it sued on its own behalf, would have been entitled to a jury's determination, at a minimum, of its damages against its broker under the brokerage contract and of its rights against its own directors because of their negligence. Under these circumstances it is unnecessary to decide whether the corporation's other claims are also properly triable to a jury. Dairy Queen, Inc. v. Wood, 369 U.S. 469 [, 82 S.Ct. 894, 8 L. Ed.2d 44] (1962)." 396 U.S. 531, 542–543, 90 S.Ct. 733, 740.

was subordinated to the traditional characterization of particular claims. Thus, the Court had "no doubt" that a claim for money damages predicated on breach of contract or gross negligence was legal in character.

This conclusion did not rest, as it might, simply on the fact that such a claim was enforceable at common law in England in 1791. Instead, the Court identified history as only one of three criteria that should be considered in determining the "legal" nature of an issue. The other two were: "second, the remedy sought; and, third, the practical abilities and limitations of juries." [25] Indeed, not only did the Court identify these two additional criteria; it also implied, without expressly stating, that history may be a less reliable guide than the other two.[26] We have already concluded that under an historical analysis a jury trial is required in the present case; we proceed to consider the other two criteria.

Under the second and third criteria identified in Ross v. Bernhard, the civil rights claim asserted in this case was certainly appropriate for determination by a jury. The relief sought was actual damages and punitive damages. Both the determination of the amount which would adequately compensate a litigant for an unliquidated claim and the punitive element of the award are appropriate for jury determination. As we have already discussed, juries historically have been required where the remedy sought was damages, either compensatory or punitive.

The "practical abilities and limitations of juries" obviously present no obstacle to their determination of the issues presented in these civil rights cases.

Typically, the facts are not complex and decision turns on appraisals of credibility and motive. Certainly such matters are far more suitable for jury determination than complicated commercial issues that routinely arise in derivative and antitrust litigation. Thus, the third as well as the second criterion identified in Ross v. Bernhard strongly militates in favor of recognition of the right to a jury trial in a case of this kind.

History indicates that a jury trial is required. And if the Supreme Court adheres to its identification of two additional criteria in Ross v. Bernhard, both the damage relief sought and the character of the issue to be tried compel the conclusion that the litigants are entitled to a jury.

## IV.

The *Jones & Laughlin* holding that the Seventh Amendment is inapplicable to an N.L.R.B. proceeding terminating in the entry of an order directing reinstatement and awarding back pay was supported not only by the Court's characterization of the proceeding as statutory, but also by reference to chancery practice in which damages could be awarded as an element of complete equitable relief.[27] In this case the district court also regarded the relief authorized by the 1968 Act as primarily equitable and considered it appropriate to award damages as incident to such relief.

As the case developed, the defendant's right to demand a jury was not determined until after plaintiff's claim for equitable relief had been abandoned. Nevertheless, we share the district court's view that the right to a jury trial in this kind of case may properly be tested by the character of the relief

---

25. "As our cases indicate, the 'legal' nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries. *Of these factors, the first, requiring extensive and possibly abstruse historical inquiry, is obviously the most*

difficult to apply." 396 U.S. at 538 note 10, 90 S.Ct. at 738. (Emphasis added.)

26. In the preceding footnote we have emphasized the language which so implies.

27. See quotation from the Court's opinion in footnote 15, *supra*.

requested in plaintiff's complaint. Our decision is not predicated on the special circumstance that only the damage claims remained when defendant's demand for a jury was denied.

At common law, a court of equity, in a proceeding properly before it, would hear and determine any legal issues incidental to the equitable issues and award any legal relief which might be incidental to equitable relief.[28] Multiplicity of suits could thus be avoided. And if equitable relief were no longer appropriate, the chancellor might nevertheless award damages or, in his discretion, permit the complaint to be amended to state only a legal claim which would then be triable to a jury.[29]

Today, however, legal and equitable issues can both be raised in one "civil action" under the Federal Rules. Thus, the avoidance of a multiplicity of suits and the desire to afford a complete remedy in one proceeding are no longer justifications for the "incidental" power of an equity court to award money damages. The right of the court, without a jury, to award "incidental" legal relief was nevertheless thought secure under the Federal Rules until the Supreme Court indicated differently in Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988, and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S. Ct. 894, 8 L.Ed.2d 44.

In Beacon, the Court upheld the petitioner's right to a jury trial of his counterclaim for treble damages under the antitrust laws which he had asserted in response to a complaint seeking, in part, equitable relief. In Dairy Queen, plaintiff sought injunctive relief against use of a trademark and an accounting to determine the amount due under a contract deemed breached. The district court held that the proceeding was either "purely equitable" or that any legal issues were "incidental" to the equitable issues. Mr. Justice Black, speaking for the Court, disposed of the "incidental" issue quite bluntly: "[N]o such rule may be applied in the federal courts."[30] Referring to Beacon, he wrote:

"The holding in Beacon Theatres was that where both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.' That holding, of course, applies whether the trial judge chooses to characterize the legal issues presented as 'incidental' to equitable issues or not. Consequently, in a case such as this where there cannot even be a contention of such 'imperative circumstances,' Beacon Theatres requires that any legal issues for which a trial by jury is timely and properly demanded be submitted to a jury. There being no question of the timeliness or correctness of the demand involved here, the sole question which we must decide is whether the action now pending before the District Court contains legal issues."[31]

---

28. For purposes of our discussion of this "incidental to equitable relief" issue, we will assume, without deciding, that compensatory damages comparable to those sought herein might have been recovered in an 18th century chancery proceeding in which equitable relief appropriate when the suit was filed later became inappropriate.

29. See generally 5 Moore's Federal Practice, ¶ 38.19 [2]; 9 Wright & Miller, Federal Practice and Procedure, Civil § 2308, at pp. 42–43.

30. 369 U.S. at 470, 82 S.Ct. at 896. The complete sentence was:

"At the outset, we may dispose of one of the grounds upon which the trial court acted in striking the demand for trial by jury—that based upon the view that the right to trial by jury may be lost as to legal issues where those issues are characterized as 'incidental' to equitable issues—for our previous decisions make it plain that no such rule may be applied in the federal courts." Ibid.

31. Id. at 472–473, 82 S.Ct. at 897. Preceding the quotation in the text, the Court wrote:

 It would appear that *Beacon* and *Dairy Queen* have mandated that once any claim for money damages is made, the legal issue—whether defendant breached a duty owed plaintiff for which defendant is liable in damages—must be tried to a jury whether or not there exists an equitable claim to which

" . . . Rule 38(a) expressly reaffirms that constitutional principle, declaring: 'The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." Nonetheless, after the adoption of the Federal Rules, attempts were made indirectly to undercut that right by having federal courts in which cases involving both legal and equitable claims were filed decide the equitable claim first. The result of this procedure in those cases in which it was followed was that any issue common to both the legal and equitable claims was finally determined by the court and the' party seeking trial by jury on the legal claim was deprived of that right as to these common issues. This procedure finally came before us in Beacon Theatres, Inc. v. Westover, . . . . " *Id.* at 472, 82 S.Ct. at 896.

32. "Since the decision of the Supreme Court in Beacon Theatres, Inc. v. Westover, and Dairy Queen, Inc. v. Wood, it is clear that there is a right to a jury trial on an issue of damages, whether they are pleaded independently, or as an incident to a request for an injunction." 5 Moore's Federal Practice ¶ 38.24 [1] at p. 190.4. See also ¶ 39.19 [2] at p. 172.1.

There is an equitable remedy of restitution which would not, of course, be eliminated by these decisions. In Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332, the Court recognized that in the government's suit for an injunction to enforce the emergency Price Control Act of 1942, the government might recover overcharges as restitution. The court thought the equitable remedy of restitution appropriate—even though not not specified in the statute—because it was incidental to other equitable relief and because its use would be appropriate to the enforcement of the statute. But these were justifications for the awarding of relief concededly equitable. The statute also permitted a private suit for damages and a government suit for damages (in

the damage claim might once have been considered "incidental." [32] We therefore conclude that the right to a jury trial of a claim for damages under the Civil Rights Act of 1968 may not be denied on the ground that such damages are merely incidental to the prayer for injunctive relief.[33]

the nature of penalties as the Court described them) ; in either case the damages might be trebled. The Court noted that restitution "differs greatly from the damages and penalties which may be awarded." *Id.* at 402, 66 S.Ct. at 1091. These remedies were expressly identified as legal in nature, and hence a jury trial would have been required.

33. It seems quite clear that the punitive damages in this case cannot be considered "incidental" to equitable relief. See note 44, *infra*. See also Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332, in which the Supreme Court viewed the government's right to sue for damages under the Emergency Price Control Act of 1942 as an action at law for "penalties." *Id.* at 401–402, 66 S.Ct. 1086. See also United States v. Jepson, 90 F.Supp. 983 (D.N.J.1950). But *cf.* United States v. Shaughnessy, 86 F.Supp. 175 (D.Mass.1949). The *Shaughnessy* court held that the government could recover statutory penalties along with an injunction under the Housing and Rent Act of 1947. One basis for the decision, that the damages could be considered "incidental" to equitable relief, is now obsolete in view of *Beacon* and *Dairy Queen.* The other basis was that the "damages sought are in the nature of a penalty when sued for by the United States, and this right to sue exists only where the tenant himself has failed to bring his action. It is essentially what would be an old action in equity and, as such, is triable before a court without a jury." *Ibid.* Professor Moore is critical of this decision. 5 Moore's Federal Practice ¶ 38.37 [1] at 307. The court failed to mention either the Supreme Court's decision in *Porter* or the general proposition that equity will not avoid damages penal in character. To the extent that it may have viewed the suit as one in equity because the government stood in the shoes of the individual tenant, Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (discussed in the text, *supra*), has clearly eliminated that basis for denying a jury trial.

## V.

Since the district court relied on several cases [34] holding that in an employee's suit for reinstatement and back pay under Title VII of the Civil Rights Act of 1964, the employer is not entitled to a jury trial, we should briefly indicate why we think the reasoning of those cases is inapplicable here.

First, insofar as the cases hold that back pay is a legal remedy which may be recovered as incidental to equitable relief, we believe they cannot stand in the face of *Beacon* and *Dairy Queen*.

Second, to the extent that they hold, relying on N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48–49, 57 S. Ct. 615, 81 L.Ed. 893, that a jury trial is not required because the right vindicated is a statutory right, we reject the conclusion because it fails to differentiate between a statutory proceeding and the enforcement of a statutory right in an ordinary "civil action" in the courts.

Third, an acceptable rationale for awarding back pay in a non-jury judicial proceeding is consistent with our analysis of the damage claims asserted in this case. It is not unreasonable to regard an award of back pay as an appropriate exercise of a chancellor's power to require restitution.[35] Restitution is clearly an equitable remedy. As Professor Moore put it:

"In equity, restitution is usually thought of as a remedy by which defendant is made to disgorge illgotten gains or to restore the status quo, or to accomplish both objectives." [36]

The retention of "wages" which would have been paid but for the statutory violation (of improper discharge) might well be considered "ill-gotten gains"; ultimate payment restores the situation to that which would have existed had the statute not been violated.[37]

---

34. See note 8, *supra.* See also Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1125 (5th Cir. 1969) ; Harkless v. Sweeny Independent School District, 427 F.2d 319, 324 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed. 2d 439 (no jury trial for back pay claim under 42 U.S.C. § 1983) ; Culpepper v. Reynolds Metals Co., 296 F.Supp. 1232, 1239–1243 (N.D.Ga.1968), reversed on other grounds, 421 F.2d 888 (5th Cir. 1970). *Cf.* Ochoa v. American Oil Co., 338 F.Supp. 914 (S.D.Tex.1972) (court writes in depth opinion contrary to these prevailing cases but follows circuit precedent in denying jury trial).

35. This reasoning is applicable to 42 U. S.C. § 1983 as well since that statute authorizes not only "an action at law" but also a "suit in equity."

36. 5 Moore's Federal Practice ¶ 38.24 [2] at p. 190.5.

37. Similarly, rent overcharges might be termed "ill-gotten gains." Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332, discussed in note 32, *supra.* Attempts have been made to distinguish private actions and actions intended to correct an offense against the public interest, with the conclusion that a jury trial need not be afforded in the latter situation. In addition to the analytic difficulty with this public-private distinction, see Note, The Right to Jury Trial Under Title VII of the Civil Rights Act of 1964, 37 U.Chi.L.Rev. 167, 175–176, we fail to see how this makes any difference in the application of the Seventh Amendment. Whether a purely private wrong or a wrong somehow associated with the public interest is to be vindicated, if Congress chooses to permit its vindication by a "civil action" in the courts, it must respect the commands of the Seventh Amendment. Suits to collect statutory penalites—clearly suits brought to redress offenses against the public interest—have long been considered suits to collect a debt which are triable to a jury. See Hepner v. United States, 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720, and cases there cited. See also Fleitmann v. Welsbach Street Lighting Co., 240 U.S. 27, 29, 36 S.Ct. 233, 60 L.Ed. 505; Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510, 79 S.Ct. 948, 3 L.Ed.2d 988. This "public interest" concept might appropriately be used as a persuasive justification for the use of the equitable remedy of restitution. See Porter v. Warner Holding Co., 328 U.S. at 402, 66 S.Ct. 1086. The court in Wirtz v. Jones, 340 F.2d 901, 905 (5th Cir. 1965) referred to the fact that the suit was "to redress a wrong done to the public good" when it denied a jury trial in a suit by the government to enjoin violation

**1122**

The payment of compensatory damages in a housing discrimination case, however, is not a return to plaintiff of something which defendant illegally obtained or retained; it is a payment in money for those losses—tangible and intangible—which plaintiff has suffered by reason of a breach of duty by defendant. Such damages, as opposed to rent overcharges,[38] unpaid overtime wages,[39] or back pay, cannot properly be termed restitution.[40]

Whether or not the jury trial issue was correctly resolved in the back pay cases arising under the 1964 Act,[41] we are satisfied that they are not applicable to the question presented to us under the 1968 statute.

## VI.

As the district court correctly emphasized, there are persuasive reasons for interpreting § 812 to authorize "the court" but not a jury to award damages to an injured party. When those words are used in connection with the allowance of fees, they clearly describe the judge rather than the jury.[42] Therefore, it is argued that the same words in the clause providing that the "court" may award damages must also refer to the trial judge rather than the jury.

The argument is persuasive but not compelling. The "award" may refer to the entry of judgment by the court just as the amount which a plaintiff may "recover" in antitrust litigation is finally determined by the court's judgment rather than the verdict of a jury, which is unmentioned in the Clayton Act but is undeniably required if demanded by either party.

Other language in the statute implies, without expressly stating, that a jury's participation is appropriate. The statutory reference to "damages" and also to "punitive damages" would normally contemplate a jury verdict as an element of the judicial process leading up to the fi-

of the Fair Labor Standards Act and to compel payment of withheld wages. However, the opinion makes it clear, citing as it does the *Porter* case, that the court was speaking of the equitable power to order restitution. If the remedy cannot fairly be characterized as restitution, however, the fact that the recovery sought is to redress a wrong done to the public good should not affect the right to a jury trial.

38. Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332. See note 32, *supra*.

39. Wirtz v. Jones, 340 F.2d 901 (5th Cir. 1965). See note 37, *supra*. If, however, an employee rather than the government sues for back wages and liquidated damages under the Fair Labor Standards Act, the action is triable to a jury. See cases cited in *Wirtz* at p. 904. The employee's action is generally viewed as analogous to a common law action of debt or assumpsit. The liquidated damages available to an individual plaintiff would not be recoverable in equity as restitution. In any event, the same recovery available as restitution in equity might also be available in the common law action for general assumpsit. See 5 Moore's Federal Practice ¶ 38.24 [2] at p. 190.5.

40. One commentator's observation in the Title VII situation might apply equally well to other instances of restitution: "However, it is important to note that the highly subjective questions of damages, which are often felt to be particularly appropriate for jury determination, are not present in Title VII cases. Back pay awards usually involve a definite amount for a definite period of time, and the total amount in controversy often can be stipulated by the parties. Most problems in determining the amount of a back pay award would be ones of computation rather than subjective evaluation." Comment, The Right to Jury Trial Under Title VII of the Civil Rights Act of 1964, 37 U.Chi. L.Rev. 167, 173 (1969).

41. We note the conflicting views expressed by Judge Noel in Ochoa v. American Oil Co., 338 F.Supp. 914 (S.D.Tex.1972), but we, of course, express no opinion on the issue since it is not before us.

42. The proviso to subparagraph (c) states that the prevailing plaintiff shall be awarded fees if "said plaintiff in the opinion of the court is not financially able to assume said attorneys' fees." 42 U. S.C. § 3612(c).

nal award.[43] Certainly it is highly unusual for a federal statute to authorize a court to impose punishment, even if limited to $1,000, without according the defendant the right to a jury trial.[44]

The term "civil action" in legislation enacted since the merger of law and equity in 1938 is comparable to the words "action at law" or "suit in equity" which were used previously.[45] The words "action at law" implied a right to jury trial. The words "civil action," as *Beacon*, *Dairy Queen* and *Ross* make clear, do not in any sense imply that there is no right to a jury trial—a "civil action" asserting a legal claim is triable to a jury.

The legislative history of the 1968 act is silent on the question. There is no evidence that the proponents of the legislation expressed fear that the right to a jury trial would undermine the statute's effectiveness, or conversely, that opponents accepted any compromise in reliance on an assurance that juries could be demanded. The policy consider-ations which prompted the legislation probably favor a denial of the right; on the other hand, the more basic constitutional considerations which surround the right to a jury as a protection against the over-zealous judge, point the other way. Nor, if the right to have a jury represent a fair cross section of the community and the desirability of broadening lay participation in judicial implementation of civil rights are kept in mind, can one assert that policy considerations unequivocally favor one view rather than the other.

In the end, we look to another canon of construction as controlling in this case. As Mr. Justice Holmes stated in United States v. Jin Fuey Moy: "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." 241 U.S. 394, 401, 36 S.Ct. 658, 659, 60 L.Ed. 1061. See also United States v. Campos-Serrano, 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457.[46]

---

43. Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e–5(g), provides for back pay but not for "damages" or "punitive damages."

44. A court of equity would not enforce a penalty or forfeiture absent a specific statutory authorization. See Livingston v. Woodworth, 56 U.S. (15 How.) 546, 559–560, 14 L.Ed. 809; Stevens v. Gladding, 58 U.S. (17 How.) 447, 453–454, 15 L.Ed. 155. (Except in admiralty, forfeiture cases are triable to a jury. C. J. Hendry Co. v. Moore, 318 U.S. 133, 153, 63 S.Ct. 499, 87 L.Ed. 663; 5 Moore's Federal Practice ¶ 38.12 [7], subdivision 1 at p. 135.) Cf. Decorative Stone Co. v. Building Trades Council of Westchester County, 23 F.2d 426 (2d Cir. 1928), cert. denied, 277 U.S. 594, 48 S.Ct. 530, 72 L.Ed. 1005. Furthermore, it appears that the few cases which have held that a court may decide if punitive damages shall be awarded have all been patent cases in which a jury trial was available on the issues of infringement and actual damages and the court merely decided, pursuant to unequivocal statutory language, whether the damages should be increased (up to a maximum of three times the actual damages). See Seymour v. McCormick, 57 U.S. 480, 488–489, 16

How. 480, 14 L.Ed. 1024; Swofford v. B. & W., Inc., 336 F.2d 406 (5th Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557; Kennedy v. Lasko Co., 414 F.2d 1249 (3rd Cir. 1969). Those cases indicate that the jury shall determine the issue of actual damages; the latter two cases find that *Beacon* and *Dairy Queen* compel a jury trial on the actual damage question. It is one thing to permit a judge to increase the damage award after a jury trial in which a statutory violation has been found and actual damages awarded (the trial judge's right to set the amount of a fine in a criminal case *after* a jury trial on the factual issues is somewhat analogous); it is quite another thing to permit the imposition of punishment when there is no jury trial as an element of the judicial process leading up to that result.

45. See 42 U.S.C. § 1983.

46. And see Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 448–449, 7 L.Ed. 732:
"If, indeed, the construction contended for at the bar were to be given to the act of Congress, we entertain the most serious doubts, whether it would not be unconstitutional. No Court ought, unless the terms of an act ren-

Even if our discussion of the Seventh Amendment is deemed inadequate to overcome an unambiguous statutory denial of a jury trial in an action to recover compensatory and punitive damages, there are certainly enough "grave doubts upon that score" that we should place an interpretation on the statute which will avoid the constitutional issue. We therefore hold that it was error for the district court to refuse defendants' request for a jury trial.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

dered it unavoidable, to give a construction to it which should involve a violation, however unintentional, of the constitution. . . ."