**Tracy PACIOREK, Plaintiff,**

v.

**MICHIGAN CONSOLIDATED GAS COMPANY, Defendant.**

**No. 96–CV–74107.**

United States District Court, E.D. Michigan, Southern Division.

April 20, 1998.

---

Cheryl B. Lord, Edward Turfe, Detroit, MI, for plaintiff.

Martin J. Galvin, John F. Birmingham, for Defendant.

## *AMENDED ORDER* [1]

JULIAN ABELE COOK, Jr., District Judge.

The Plaintiff in this cause of action, Tracy Paciorek, alleged that the Defendant, Michigan Consolidated Gas Company (MichCon), discriminated against her on the basis of her sex, thereby violating Title VII, 42 U.S.C. § 2000e *et seq.*, as well as the Michigan Elliott–Larsen Civil Rights Act, Mich.Comp. Laws § 37.2101 *et seq.* She also brought a claim for intentional disability discrimination and failure to reasonably accommodate, in

---

**1.** This Amended Order is being issued to correct an inaccuracy in the previous Order filed on April 15, 1998; to wit, the statement that this Court had granted the Plaintiff an additur of $1.00 in nominal damages after the jury returned its verdict. In fact, no additur was either requested or awarded at the time. Thus, this Amended Order substantially omits the discussions that relate to additur.

violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* In addition, Paciorek asserted several common law claims; to wit, that MichCon (1) had unlawfully retaliated against her for filing a discrimination charge with the United States Equal Employment Opportunity Commission, and (2) constructively discharged her.

After a trial that began on August 26, 1997, the jury returned a verdict on September 10, 1997 in which they concluded that MichCon had failed to accommodate Paciorek's disability, in violation of the ADA, but found no liability on her remaining claims. As a consequence, it awarded Paciorek $30,000.00 in punitive damages, but no compensatory damages. The option of rendering an award of nominal damages was not submitted to the jury because it had not been requested by either party. Accordingly, this Court entered a Judgment on September 18, 1997, followed by an Amended Judgment on September 23, 1997. The latter corrected an error with respect to the date on which the jury returned its verdict, and also explained that the Court had inadvertently denied costs in the original Judgment.

Subsequently, during October 1997, the parties to this cause of action filed a series of post-trial motions. For the reasons that have been stated below, (1) Paciorek's motion to alter or amend the judgment is denied as untimely, (2) her motion for a new trial on damages is denied for the same reason, (3) MichCon's motion to amend the judgment is granted in part and denied in part, and (4) its motion for judgment as a matter of law is granted in part and denied in part.

## I.

In her motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e), Paciorek requests that this Court grant her the remedy of (1) reinstatement and all attendant benefits, (2) injunctive relief to ensure Mich-Con's future compliance with the ADA, and (3) any other relief deemed necessary, including an additur of nominal damages.

■ MichCon first objects to Paciorek's motion on the basis that it is untimely, having been filed past the requisite ten day period as required by Fed.R.Civ.P. 59(e) which specifies that a motion to "alter or amend the judgment shall be filed no later than 10 days after entry of the judgment." Therefore, as an initial matter, it must be determined whether the original or the Amended Judgment controls the running of the applicable ten day period. The general rule in such a situation is that the latter judgment prevails if it changes the original judgment in some material way.

> [T]he mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken ... begin to run anew. The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.

*FTC v. Minneapolis–Honeywell Co.,* 344 U.S. 206, 211–12, 73 S.Ct. 245, 97 L.Ed. 245 (1952); *York v. Tate,* 858 F.2d 322, 326 (6th Cir.1988) (for purposes of Rule 59(e), judgment is significantly altered when new judgment changes matters of substance, or resolves a genuine ambiguity, in judgment previously rendered), *cert. denied,* 490 U.S. 1049, 109 S.Ct. 1960, 104 L.Ed.2d 428 (1989); *Cornist v. Richland Parish School Bd.,* 479 F.2d 37, 39 (5th Cir.1973). Thus, if only a clerical change is made in the second judgment, such as a correction of a date, the time for filing post-trial motions runs not from entry of the second judgment but rather from that of the first judgment. *Cornist,* 479 F.2d at 39.

The parties agree that the correction in the Amended Judgment of the date on which the jury returned its verdict was no more than a clerical matter, and had no effect on the time within which Paciorek's Rule 59(e) motion had to be filed. However, they do disagree on whether the deletion in the Amended Judgment of the sentence "No costs" was a substantial change from the

original Judgment. Given that Paciorek has cited no authority for her position, MichCon has presented the better argument by citing to *Collard v. United States,* 10 F.3d 718 (10th Cir.1993), which is nearly on point. In that case, the trial court entered a Judgment on January 8, 1992, and then on its own motion entered a second Judgment six days later which amended the first only by awarding costs. *Collard,* 10 F.3d at 719. The Tenth Circuit Court of Appeals determined that this sole change did not substantially alter the original Judgment because costs do not implicate the merits of the litigation. *Id.* Thus, this appellate tribunal concluded that the plaintiff's Rule 59 motion was untimely because it was filed more than ten days after entry of the controlling original Judgment. *Id.*

The *Collard* reasoning is consistent with the thrust of the Federal Rules of Civil Procedure and the views of commentators, who consider the matter of costs to be collateral to the merits of a case. *See* Fed.R.Civ.P. 58 (separating entry of judgment from taxation of costs); 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 2785, at 26–27 (2d ed. 1995) ("Entry of judgment and taxation of costs are separate legal acts."). On a related issue, the Supreme Court has held that a request for attorney's fees is "uniquely separable from the cause of action to be proved at trial," and, as such it does not imply a change in the judgment so much as it represents an effort by the prevailing party to recover the full extent of the award. *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 451–52, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). The same reasoning applies to costs. As a consequence, logic dictates that changes in a judgment as to costs do not materially alter the rulings on the merits of the issues in controversy or substantially affect the parties' rights as to the subject matter of the litigation.

Thus, the Court holds that MichCon is correct in arguing that the applicable ten day period runs from September 18, 1997, the date upon which the original Judgment was entered, rather than from September 23, 1997, the date of the Amended Judgment. Paciorek asserts that her motion is nonetheless timely because the two judgments were delivered to her by mail, and thus she gained an additional three filing days pursuant to Fed.R.Civ.P. 6(e).[2] This argument must also be rejected because Rule 6(e) is implicated only when a prescribed period of time runs from *service* of a writing, while the time for filing Rule 59(e) motions instead run from the *entry* of a judgment. For the purposes of Rule 59(e), the applicable date of entry occurs when the judgment is noted in the civil docket of the district court pursuant to Fed.R.Civ.P. 79(a). *Ogden v. Michigan Bell Telephone Co.,* 829 F.2d 1126 (Table), 1987 WL 44856, *1 (6th Cir. 1987); *see* 12 Moore's Federal Practice § 58.03[1] (1997); 10 Wright, Miller, & Kane, Federal Practice & Procedure: Civil § 2651 at 11–12 (2d ed.1983) (entry of judgment refers to "the ministerial notation of the judgment by the clerk of the court pursuant to [Fed.R.Civ.P.] 58," and is crucial for measuring the time periods of various post-trial motions). Therefore, Rule 6(e) may not be used to extend the time for filing a Rule 59(e) motion. *See Welsh v. Elevating Boats, Inc.,* 698 F.2d 230, 231–32 & n. 3 (5th Cir.1983).

Consequently, Paciorek's motion, which was filed on October 6, 1997,[3] must be denied as untimely because, when correctly measured from the date of entry of the original Judgment as computed by the strictures of Fed.R.Civ.P. 6(a), it falls outside of the ten day limitation period that is imposed by Fed.R.Civ.P. 59(e). Moreover, the Court lacks authority to extend the time for filing a Rule 59(e) motion. Fed.R.Civ.P. 6(b).

## II.

In her second motion, which was also filed on October 6, 1997, Paciorek seeks to obtain

---

**2.** Fed.R.Civ.P. 6(e) provides:
Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

**3.** MichCon incorrectly asserts that Paciorek's motion was not filed until October 7, 1997.

a new trial as to the issue of damages, pursuant to Fed.R.Civ.P. 59(a). Such motions "shall be filed no later than 10 days after *entry* of the judgment." Fed.R.Civ.P. 59(b) (emphasis added). Thus, for the same reasons that have been set forth in the preceding section, this motion must also be denied as being untimely.

## III.

On October 2, 1997, MichCon filed a timely Rule 59(e) motion to alter the Amended Judgment so that, if granted, it would specifically state that the jury found no liability on (1) Paciorek's claims of intentional discrimination on the basis of her disability or sex, or (2) her assertions of retaliation or constructive discharge. Although it is the opinion of this Court that the Judgment which was issued in this case conforms with the minimal requirements of Fed.R.Civ.P. 58, it would be appropriate to grant the form of relief requested by MichCon. Thus, the Court will deny in part and grant in part MichCon's motion. The motion is denied insofar as MichCon indulges in "the normal excess of detail supplied by zealous advocates in their natural desire to press home all conceivable *ad hoc* advantages from the judgment." *Matteson v. United States,* 240 F.2d 517, 519 (2d Cir.1956), but it is granted to the extent that the Court will issue a Second Amended Judgment which is consistent with the Amended Judgment but includes language to the effect that, with the exception of Paciorek's failure to accommodate claim, no liability was found by the jury on all remaining causes of action.

## IV.

The last post-trial motion that needs to be addressed was also filed by MichCon on October 2, 1997, and seeks judgment as a matter law pursuant to Fed.R.Civ.P. 50(b). Specifically, MichCon asks this Court to vacate the jury's award of $30,000.00 in punitive damages and to alter the Amended Judgment because Paciorek failed to obtain either compensatory or nominal damages.[4] This contention is premised on the traditional tort principle, which has been discussed in Restatement (Second) of Torts § 908 cmts. b, c (1979); namely, that a claimant may not recover punitive damages without first establishing liability for either compensatory or nominal damages.

However, the Seventh Circuit Court of Appeals (Seventh Circuit) has held this doctrine to be inapplicable to federal civil rights claims, finding that the 1991 Civil Rights Act, which specifically authorized awards of compensatory and punitive damages, defines when punitive damages may be granted in those causes of action. 42 U.S.C. §§ 1981a(a)(1) (applicable to civil rights claims), (2) (applicable to disability discrimination claims); *Timm v. Progressive Steel Treating, Inc.,* 137 F.3d 1008, 1009–11 (7th Cir.1998) (Oury's award of punitive damages in sex discrimination suit may stand despite no compensatory damages or back pay award); *Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1349, 1351–52 (7th Cir.1995) (upholding punitive damage awards in Title VII sex discrimination case, despite the absence of compensatory damages); *see Lebow v. American Trans Air. Inc.,* 86 F.3d 661, 669 n. 11 (7th Cir.1996) (where plaintiff claims to have been unlawfully discharged because of his union-organizing activities, his failure to adequately support claim for compensatory damages does not deprive him of right to obtain punitive damages); *Erwin v. County of Manitowoc,* 872 F.2d 1292, 1299 (7th Cir.1989) (punitive damages are recoverable under 42 U.S.C. § 1983 even in absence of any actual injury or compensatory damages); *Rogers v. Loether,* 467 F.2d 1110, 1111–12 & n. 4 (7th Cir.1972) (although reversing because trial court incorrectly denied the defendant a jury trial, appellate court reviewing housing discrimination claim based on race, brought under the Fair Housing Act of 1968, 42 U.S.C. § 3612, states that "[a]s we read the statute it does not require a

---

4. Further, MichCon argues that the additur requested in Paciorek's motion to alter or amend the judgment is improper because (1) she did not object to the nominal damage issue being withheld from the jury, and (2) an additur would violate the Seventh Amendment to the United States Constitution. In light of the Court's denial of Paciorek's motion on the basis that it is untimely, these arguments need not be addressed.

finding of actual damages as a condition to the award of punitive damages"), *aff'd,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). The *Timm* and *Hennessy* opinions omit any mention of nominal damages, and, therefore, this Court must assume that the punitive damage awards, which were upheld in those cases, were granted in the absence of any nominal damage awards. Thus, *Timm* and *Hennessy* stand for the proposition that punitive damages may be granted in civil rights cases in the absence of compensatory or nominal damages.

The Court is aware that a conflict on this issue exists between the Seventh Circuit and the First Circuit Court of Appeals (First Circuit), which has applied the traditional tort principal to § 1981a in order to hold that punitive damages must be accompanied by compensatory or nominal damages. *Kerr–Selgas v. American Airlines, Inc.,* 69 F.3d 1205, 1215 (1st Cir.1995). In *Kerr–Selgas,* the First Circuit instructed the trial court that its award of punitive damages under § 1981a(a)(1), which is applicable to Title VII actions, "must be vacated absent either a compensatory damages award, or a timely request for nominal damages." *Id.*

 This Court finds the reasoning for the sharp distinction between state common law and statutory federal civil rights claims by the Seventh Circuit to be more persuasive. This distinction is supported by the strong national policy against disability discrimination, as evidenced by the ADA. *See* 42 U.S.C. § 12101. Most importantly, "[e]xtrastatutory requirements for recovery should not be invented." *Timm,* 137 F.3d at 1010. The Civil Rights Act of 1991 states that those who bring successful ADA failure to accommodate claims, such as did Paciorek, "may recover compensatory and punitive damages as allowed in subsection (b) of this section."

42 U.S.C. § 1981a(a)(2). Subsection (b) sets forth a straightforward standard under which punitive damages may be awarded.

A complaining party may recover punitive damages under this section against a respondent ... if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1). There is nothing within this statute that conditions the imposition of punitive damages upon an award of compensatory or nominal damages. *See Hennessy,* 69 F.3d at 1352 ("Nothing in the plain language of § 1981a conditions an award of punitive damages on an underlying award of compensatory damages."). The standard, which has been set out in subsection (b), was clearly satisfied in this case, where (1) the jury found that MichCon had failed to reasonably accommodate Paciorek's disability,[5] and (2) the jury instructions and verdict form indicated to the jury that punitive damages could only be awarded if they believed MichCon acted with malice or reckless indifference to Plaintiffs disability.[6]

Additionally, the awarding of damages in employment discrimination cases has historically been analyzed independently of the common law. For example, the remedy statute under Title VII provides that successful plaintiffs are entitled to equitable relief and back pay. 42 U.S.C. § 2000e–5(g). Before the passage of the 1991 Civil Rights Act, federal courts reviewing claims for damages, including the Sixth Circuit Court of Appeals, repeatedly relied on this provision to hold that compensatory and punitive damages were unavailable in Title VII actions. *See Great Am. Fed. Sav. & Loan Ass'n. v. Novotny,* 442 U.S. 366, 374–75 & n. 17, 99 S.Ct.

---

5. Jury Verdict Form, ¶¶ 3–8, at 1–2 (Sept. 10, 1997).

6. The jury was specifically instructed that the law permitted it to award punitive damages in Paciorek's favor if it found that MichCon "intentionally discriminated against the Plaintiff with malice or reckless indifference." Jury Instructions, ¶ 55, at 23. MichCon made no objection to this jury instruction, which did not condition an award of punitive damages upon an award of

compensatory or nominal damages. In addition, the Verdict Form that was submitted to the jury in this cause of action contained the following interrogatory: "Did Defendant act with malice or reckless indifference to Plaintiff's disability so as to justify an award of punitive damages?" Jury Verdict Form, ¶ 9(b) at 3. The jury answered this question affirmatively and listed $30,000.00 as the amount of punitive damages that should be assessed against MichCon. *Id.*

2345, 60 L.Ed.2d 957 (1979); 1 Smolla, Federal Civil Rights Acts, § 9.10[1] (3d ed.1998); 45C Am.Jur.2d, Job Discrimination § 2990, note 8 and accompanying text (1993); *e.g., Padway v. Palches,* 665 F.2d 965, 968 (9th Cir.1982); *Harrington v. Vandalia–Butler Bd. of Educ.,* 585 F.2d 192, 194–97 (6th Cir. 1978), *cert. denied,* 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660. It would be incongruous to first analyze civil rights remedy statutes independently of the common law so as to deny successful plaintiffs damages, but then to later incorporate the common law into that analysis so as to achieve the same result. Thus, just as occurred with § 2000e-5(g), the plain language in § 1981a(b)(1) of the 1991 Civil Rights Act should control Paciorek's access to punitive damages.[7]

Finally, MichCon argues that Paciorek may not benefit from *Hennessy,* in which the plaintiff "demonstrated to the judge that she *was* injured and the judge ordered back pay."[8] MichCon argues that the punitive damage awards which were upheld in *Hennessy,* despite the absence of compensatory damages, can be distinguished from this case, where the jury's verdict indicates that Paciorek failed to prove any actual injury. However, this distinction was argued and subsequently rejected in a later Seventh Circuit case, whose rationale is adopted by the Court. *Timm,* 137 F.3d at 1009–10 (punitive damages upheld in absence of compensatory damages or back pay award because victim's ability to avoid actual injury, such as by finding better paying work, does not extinguish other remedies).

Consequently, for the reasons that have been discussed above, MichCon's attempt to apply a state common law tort principle to this federal civil rights claim must be rebuffed, and its Fed.R.Civ.P. 50(b) motion rejected.

## V.

Accordingly, for the reasons that have been stated above, Paciorek's two post-trial motions are denied as untimely. MichCon's motion to alter the Amended Judgment is granted in part and denied in part, with the effect that a Second Amended Judgment, which indicates that the jury declined to hold it liable for any of Paciorek's claims apart from her failure to reasonably accommodate complaint, will be entered. Lastly, its motion for judgment as a matter of law is denied. MichCon remains liable to Paciorek for $30,000.00 in punitive damages.

IT IS SO ORDERED.

---

**7.** Moreover, this same approach of relying on the plain language of a civil rights statute, and reading it independently of the common law, was adopted in a recent Supreme Court civil rights case. There, a discharged employee, who to obtain severance pay had signed a waiver of rights, brought suit against her ex-employer under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq. Oubre v. Entergy Operations, Inc.,* —— U.S. ——, 118 S.Ct. 838, 840, 139 L.Ed.2d 849 (1998). A separate federal law, the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. §§ 626(f)(1)(B), (F), (G), imposes specific requirements for valid ADEA waivers. The employer, while acknowledging that it had not complied with OWBPA, defended its administrative decision to terminate the employ-

ee by asserting that the common law doctrines of ratification and tender back prohibited the action, at least until she returned her severance pay. *Id.* 118 S.Ct. at 841, 842. The Supreme Court rejected the argument, finding that, because the statute's requirements are clear and contain no qualification, OWBPA "sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law.... The text of the OWBPA forecloses the employer's defense, notwithstanding how general contract principles would apply to non–ADEA claims." *Id.* at 841–42.

**8.** Def. Reply Br.Mot. Judgment as a Matter of Law, at 2.