REVISED June 2, 2000

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-31351

LOUISIANA ACORN FAIR HOUSING; GENE LEWIS,

Plaintiffs-Appellees-Cross-Appellants,

VERSUS

DANNY LEBLANC,

Defendant-Appellant-Cross-Appellee.

Appeals from the United States District Court
For the Western District of Louisiana

May 15, 2000

Before KING, Chief Judge, and DUHÉ and DeMOSS, Circuit Judges.

DUHÉ, Circuit Judge:

Danny LeBlanc appeals a jury's award of punitive damages to Gene Lewis, compensatory damages to Louisiana ACORN Fair Housing, Inc. (the "Appellees"), and the district court's award of attorney's fees to Appellees. The Appellees also appeal the district court's attorney's fees award. We reverse and vacate the jury's punitive damage award to Lewis, its compensatory damage award to ACORN, and the district court's attorney's fees award. We affirm all other issues.

I. BACKGROUND

Gene Lewis ("Lewis"), who is black, called Danny LeBlanc ("LeBlanc") on January 2, 1996, in response to a newspaper advertisement regarding the rental of a one-bedroom apartment in Lake Charles, La. LeBlanc owns and rents eleven furnished apartment units. Lewis then went to view the apartment and make the $100 deposit LeBlanc had requested. A tenant, Betty Richardson, showed Lewis the apartment. Richardson told Lewis that she did not think LeBlanc would rent to him because LeBlanc was prejudiced.

Lewis then asked to speak to LeBlanc. When LeBlanc arrived, he allegedly told Lewis that "I just don't rent to you people." When Lewis asked what LeBlanc meant by "you people," LeBlanc stated "black, color[ed], Negro, whatever you call yourself, I don't rent to y'all." LeBlanc contends that he did not rent to Lewis because Lewis was arguing with Richardson and, therefore, he did not like Lewis' attitude. Lewis later consulted Louisiana ACORN Fair Housing, Inc. ("ACORN"), a private nonprofit fair housing organization, which conducted testing that confirmed Lewis' allegation that LeBlanc discriminated against prospective tenants based on race.

Lewis and ACORN sued LeBlanc under the Federal Fair Housing Act, 42 U.S.C. § 3601 et. seq. ("FHA"), and under the Louisiana Open Housing Act, La. Rev. Stat. Ann. § 51:2601 et. seq (West 1999). This suit was later consolidated with a suit brought by the United States against LeBlanc also under the Federal Fair Housing

Act.  The two cases were later severed for trial purposes because the United States was seeking injunctive relief, which it subsequently won, and Lewis and ACORN were seeking monetary relief.

A jury trial was held and the jury verdict is the centerpiece of this appeal.  The jury first concluded that LeBlanc made statements to Lewis indicating an intent not to rent apartments to black people.  The jury then found that LeBlanc refused to rent an apartment to Gene Lewis and that race or color was an effective reason for that refusal.

The Jury awarded Lewis no compensatory or nominal damages but awarded him $10,000 in punitive damages.  The jury based its punitive damages award on its finding that LeBlanc's refusal to rent an apartment to Lewis was motivated by ill will, malice, or a desire to injure Lewis, or a reckless or callous disregard for Lewis' legal rights.  The jury awarded ACORN $1,076 in compensatory damages but did not award it nominal or punitive damages.  The district court later awarded  the Appellees $10,000 in attorney's fees pursuant to 42 U.S.C. § 3613(c)(2).[1]

Although the district court provided detailed instructions regarding damages to the jury, it did not specify whether a punitive damages award must be predicated upon a nominal or

---

[1]  The FHA allows a prevailing party to recover reasonable attorney's fees and costs.  The district court held that both Lewis and ACORN were prevailing parties under the Act because the jury found that LeBlanc had violated the FHA even though it did not award Lewis any actual damages.

3

compensatory damages award. The court made clear that if the jury determined that LeBlanc violated the FHA it *may* award compensatory and/or nominal damages. During its deliberations, the jury asked the court for definitions of compensatory and nominal damages. The judge then read definitions to the jury from Black's Law Dictionary. The judge said "[c]ompensatory damages are such as will compensate the injured party for the injury sustained and nothing more, such as will simply make good or replace the loss caused by the wrong or injury, damages awarded to a person as compensation, indemnity or restitution for harm sustained by him." Regarding nominal damages, the judge said, "[n]ominal damages are a trifling sum awarded to a plaintiff in an action where there is no substantial loss or injury to be compensated, but still the law recognizes a technical invasion of his rights or a breach of the defendant's duty, or in cases where, although, there has been a real injury, the plaintiff's evidence entirely fails to show its amount."

## II. DISCUSSION

### A. Punitive Damages

LeBlanc contends that we should vacate Lewis' punitive damages award because the jury awarded Lewis neither compensatory nor nominal damages. Whether a plaintiff suing under the Federal Fair Housing Act may receive punitive damages absent compensatory or nominal damages is an issue of first impression in this Circuit.

4

We review this legal question de novo.

The text of the Federal Fair Housing Act does not provide us with an easy answer. Section 3613(c) of the FHA provides that "(1) In a civil action under subsection (a) of this section, if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award the plaintiff actual and punitive damages." The FHA is silent as to whether punitive damages may be awarded absent actual damages. The text neither conditions a punitive damage award upon an award of actual damages nor does it endorse the jury finding in this case.

The FHA's legislative history provides little guidance. The United States Department of Justice, as Amicus Curiae for Appellees, relies heavily on Congress's 1988 amendments to the FHA. In an effort to strengthen enforcement of the FHA, Congress removed the $1,000 limitation on punitive damage awards that had been part of the Act since it was passed in 1968. A House Committee stated that the limitation on damages "served as a major impediment to imposing an effective deterrent on violators and a disincentive for private persons to bring suits under existing law." H.R. Rep. No. 711, 100th Cong., 2d Sess. 15 (1988). The United States argues that imposing a requirement that compensatory damages are a necessary predicate to an award of punitive damages would frustrate Congress' purpose made clear in the 1988 amendments lifting the punitive damage limit. While the United States is correct to note that punitive damages are a very important component behind

5

enforcement of the FHA, the legislative history neither supports nor discredits a punitive damages award absent actual damages.

Under these circumstances, we must apply the federal common law to fill this gap in the FHA which Congress has left unanswered. Courts create federal common law when it is necessary to effectuate the intent behind a federal statute. Erwin Chemerinsky, <u>Federal Jurisdiction</u>, § 6.3 at 353 (1994). When applying civil rights statutes, federal common law must be applied to effect uniformity, "otherwise the Civil Rights Acts would fail to effect the purposes and ends which Congress intended." <u>Basista v. Weir</u>, 340 F.2d 74, 86 (3d. Cir 1965). Thus, where a cause of action arises out of a federal statute, federal, not state, law governs the scope of the remedy available to plaintiffs. <u>Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.</u>, 15 F.3d 1275, 1288 (5th Cir. 1994).

Based on these federal common law principles, we must assess both the FHA and other federal civil rights laws to determine whether a punitive damage award may stand absent a nominal or compensatory award. As the Fourth Circuit noted, "[t]here is no established federal common law rule that precludes the award of punitive damages in the absence of an award of compensatory damages." <u>People Helpers Found. Inc. v. Richmond</u>, 12 F.3d 1321, 1326 (4th Cir. 1993). We must determine whether there is a common law rule allowing such a result. The Fifth Circuit has not addressed this question as it applies to the FHA and decisions by

6

other circuits provide a variety of different answers.

The two most recent cases come from the Third and Fourth Circuits. In Alexander v. Riga, Nos. 98-3597, 98-3622, 2000 WL 295288 (3d. Cir. Mar. 22, 2000), a jury found that the defendant violated the FHA when he denied rental housing to the plaintiffs based on race. However, the jury did not award actual damages. The district court then declined to submit the issue of punitive damages to the jury. The Third Circuit reversed this decision stating: "it bears mentioning that beyond a doubt, punitive damages can be awarded in a civil rights case where a jury finds a *constitutional violation*, even when the jury has not awarded compensatory or nominal damages." Id. at *8 (citing Curtis v. Loether, 415 U.S. 189 (1974); Basista, 340 F.2d at 87) (emphasis added). The Third Circuit additionally noted that a FHA violation is all that is needed to establish liability. Id.[2]

The Fourth Circuit dealt with a similar question when a jury in a FHA case awarded one dollar in punitive damages but no compensatory damages. The Fourth Circuit concluded that "in the absence of statutory language to the contrary" punitive damages are not recoverable unless predicated upon an award of actual damages. People Helpers Found., Inc., 12 F.3d at 1327. Nevertheless, we

---

[2] Although the Third Circuit suggests that a constitutional violation is a necessary predicate for a punitive damages award absent an actual damages award, the court reversed the district court without finding that a constitutional violation had taken place.

7

respectfully suggest that the Fourth Circuit's basis for this holding is flawed. First, the court did not rely on any civil rights cases in reaching its decision. Id. at 1326-27. A survey of cases interpreting federal civil rights laws is essential, in our view, because of the need to maintain a uniform federal common law. Second, the Fourth Circuit noted that a majority of the 50 states prohibit punitive damage awards when there is no compensatory award. Id. at 1327. Although state law may be useful in articulating a policy for our interpretation of federal common law, it is federal law that must be the centerpiece of our decision not state law.

Appellees contend that two other cases support upholding Lewis' punitive damages award. In Fountila v. Carter, 571 F.2d 487 (9th Cir. 1978), a jury awarded one dollar in actual damages and $5,000 in punitive damages. The court noted in dicta that "it has in fact been noted that a finding of actual damages is not a condition to the award of punitive damages under the Civil Rights Act of 1968." Id. at 492 (citing Rogers v. Loether, 467 F.2d 1110, 1112 n. 4 (7th Cir. 1972), aff'd sub nom. Curtis v. Loether, 415 U.S. 189 (1974)). This decision is not entirely on point because the jury did award a nominal award in addition to punitive damages. Moreover, the case relies on Rogers v. Loether. The Appellees argue that Rogers supports the proposition that the FHA does not require a finding of actual damages as a condition to the award of punitive damages. 467 F.2d at 1112 n.4. However, the Seventh

8

Circuit in Rogers never decided this question raising the issue only in dicta.

In conclusion, the FHA cases do not provide us with a uniform federal common law. The Third Circuit holds punitive damages may be appropriate when a constitutional violation exists. The Fourth Circuit closes the door on punitive damages absent an award of actual damages but uses questionable authority to reach that conclusion. The Seventh and Ninth Circuit cases suggest that a punitive award is permissible absent actual damages but did not confront the question directly as we must.

We must now examine decisions by this and other federal courts interpreting similar federal civil rights statutes. In a series of 42 U.S.C. § 1983 cases, the Fifth Circuit has articulated a standard for permitting punitive damages absent an award of actual damages. Ryland v. Shapiro, 708 F.2d 967, 976 (5th Cir. 1983); Wilson v. Taylor, 658 F.2d 1021, 1033 (5th Cir. 1981); McCulloch v. Glasgow, 620 F.2d 47, 51 (5th Cir. 1980). In Ryland, 708 F.2d at 976, we said:

> The rule in our circuit is that in the absence of proof of actual injury, a plaintiff who has been deprived of his *constitutional rights* may only collect nominal damages. Mere proof of the violation of a right will not support an award of compensatory damages. However, claims of mental and emotional distress, if proven, can support an award of compensatory damages. Moreover, the societal interest in deterring or punishing violators of *constitutional rights* supports an award of punitive damages even in the absence of actual injury. (Internal citations omitted and emphasis added).

Therefore, our circuit has adhered to the general rule that a

9

punitive award may stand in the absence of actual damages where there has been a constitutional violation, a rule similar to the Third Circuit FHA rule in Alexander.

A review of other court decisions interpreting Section 1983 reveals a similar link between a finding of a constitutional violation and upholding a punitive award absent a showing of actual harm.  The Seventh Circuit has long held that a jury may award punitive damages even absent a compensatory award if the plaintiff suffered a constitutional violation.  Erwin v. Manitowoc, 872 F.2d 1292, 1299 (7th Cir. 1989); McKinley v. Trattles, 732 F.2d 1320, 1326 (7th Cir. 1984); Lenard v. Argento, 699 F.2d 874, 889 (7th Cir. 1983); Endicott v. Huddleston, 644 F.2d 1208, 1217 (7th Cir. 1980).

Beyond Section 1983, decisions interpreting other civil rights acts reach more varied results on the question whether a punitive award may be upheld absent actual damages.  Speaking generally, the Third Circuit has said that federal law permits the recovery of punitive damages and as a matter of federal common law it is not necessary to prove nominal damages.  Basista, 340 F.2d at 87.

However, since the Third Circuit's insightful decision in Basista, federal courts have become more divided on this punitive damages question.  The Seventh Circuit determined that under 42 U.S.C. § 1981(a) a punitive damages award should not be conditioned on the existence of a compensatory award.  Although the Seventh Circuit relied heavily on its Section 1983 case law, it did not

10

indicate that a constitutional violation was necessary for the punitive award to stand under 42 U.S.C. § 1981(a) or Title VII. Timm v. Progressive Steel Treating, Inc., 137 F.3d 1008, 1010 (7th Cir. 1998). See also Buckner v. Franco, Inc., No. 97-6028, 1999 U.S. App. LEXIS 7369 *17 (6th Cir. Apr. 12, 1999) (noting in dicta support for Seventh Circuit's finding in Timm). However, in another 42 U.S.C. § 1981 case, the First Circuit held that a punitive damages award must be vacated absent either a compensatory damages award or a timely request for nominal damages. Kerr-Selgas v. American Airlines, Inc., 69 F.3d 1205, 1215 (1st Cir. 1995). See also Frey v. Alldata Corp., 895 F.Supp. 221, 225 n.1 (E.D. Wis. 1995) (noting in dicta that only in cases involving a constitutional violation would federal courts allow a punitive damages award without compensatory damages); Paciorek v. Mich. Consolidated Gas Co., 179 F.R.D. 216, 221 (E.D. Mich. 1998) (noting that under 42 U.S.C. § 1981(a)(b)(1) and American's with Disabilities Act nothing conditions the imposition of punitive damages upon an award of compensatory or nominal damages).

Although the goal of a federal common law of damages is to produce uniform results, so far the federal judiciary has not succeeded in this endeavor. There are many cases under the FHA and other civil rights statutes that support either upholding or vacating Lewis' punitive damages award. However, we find most instructive our own circuit's case law limiting punitive damages awards, absent an actual damages award, to cases were a violation

11

of a constitutional right has occurred. LeBlanc did violate Lewis' rights under the FHA but he did not violate Lewis' constitutional rights. For that reason, we vacate Lewis' punitive damage award.[3]

In the alternative, the Appellees argue that we should remand the case to the district court for a further determination of the damages award. First Appellees contend that because the jury found LeBlanc violated the FHA the district court should have award Lewis nominal damages for this invasion of his civil rights. Appellees contend that when rights are violated in a civil rights case a presumption of injury exists, thereby requiring at least nominal damages. Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986); Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977).

The cases Appellees cite are not applicable to the situation before us. In Memphis Community Sch. Dist., the Supreme Court noted that nominal damages may be an appropriate means of vindicating rights whose deprivation has not cause actual injury. 477 U.S. at 308 n.11. However, the Court made this statement in reference to a violation of a constitutional right under Section 1983. Likewise, in Gore, we recognized that nominal damages could be presumed from the denial of a constitutional right. 563 F.2d at 164. Neither case Appellees cite deal with a factual situation

---

[3] Because we conclude that the punitive damages award cannot stand absent an award of actual damages, we do not decide whether a punitive damage award under the FHA must be based on egregious conduct or merely predicated on a violation of the statute. See generally Kolstad v. Am. Dental Ass'n., - U.S. -, 119 S.Ct. 2118 (1999).

12

similar to this case where the jury decided not to award the plaintiff compensatory or nominal damages. Moreover, we reiterate this case does not involve the violation of a constitutional right.

Next Appellees contend that the jury may have lumped the compensatory and nominal damages awards into the punitive sum because of its misunderstanding of the law. They also argue that the jury may have been confused about the damage definitions. We do not find this argument persuasive. The jury used a two-page verdict form that asked them only four questions addressing each type of damage award separately. The jury also asked the judge during deliberations for definitions of nominal and compensatory damages. Moreover, the fact that the jury awarded ACORN compensatory damages but not punitive damages refutes any argument that the jury may have been confused by the types of damage awards or lumped the various awards together.

B.   ACORN's Standing

LeBlanc also appeals the jury's compensatory damages award to ACORN and the court's attorney's fees award to ACORN. ACORN also appeals its attorney's fees award. Before we reach the merits of these awards, we must determine sua sponte whether ACORN has standing to bring this suit against LeBlanc.

The Supreme Court, in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), stated the minimum requirements that an organization must establish to have constitutional standing:

First, the plaintiff must have suffered an injury in fact - an

13

invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed in a favorable decision. Lujan, 555 U.S. at 560-61 (internal quotes, parentheses and citations omitted).

We must focus on the injury in fact requirement. Under the Federal Fair Housing Act, the Supreme Court has held that an organization has suffered injury in fact if the defendant's actions impaired the organization's ability to provide counseling and referral services. The Court said, "[s]uch concrete and demonstrable injury to the organization's activities - with the consequent drain on the organization's resources - constitutes far more than simply a setback to the organization's abstract social interests." Havens Realty Corp., v. Coleman, 455 U.S. 363, 379 (1982). Although the Court in Havens dealt with standing at the pleadings stage, the Court noted that the organization will "have to demonstrate at trial that it has indeed suffered impairment in its role of facilitating open housing before it will be entitled to judicial relief." Id. at 379 n.21.

Based on these two cases, the Fifth Circuit has described what types of organizational activities do not meet the Supreme Court's injury in fact requirement. For example, "[t]he mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another

14

party is insufficient to impart standing upon the organization." Association for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees, 19 F.3d 241, 244 (5th Cir. 1994) (Federal Fair Housing Act case); see also Association of Community Orgs. for Reform Now v. Fowler, 178 F.3d 350, 358-59 (5th Cir. 1999).

In contrast, we noted that an organization could have standing if it had proven a drain on its resources resulting from counteracting the effects of the defendant's actions. Id. at 360. Likewise, the Third Circuit concluded that a housing organization had standing where its staff "stopped everything else" and devoted all attention to the litigation in question and diverted resources to counter the defendant's conduct. Alexander, 2000 WL 295288 at *14 n.4. We reiterate that the Supreme Court in Havens noted that an organization must *demonstrate at trial* that it suffered some sort of impairment in facilitating open housing before receiving judicial relief.

We conclude that ACORN did not demonstrate at trial any impairment in facilitating open housing. At best ACORN proved the resources it expended defending Lewis (although ACORN never kept time sheets to record its work for Lewis); but it did not prove a drain on its resources. ACORN's executive director, Jeffrey Karlson, testified at length at the trial. However, Karlson neither mentioned any specific projects ACORN had to put on hold

15

while working on Lewis' case nor did he describe in any detail how ACORN had to re-double efforts in the community to combat discrimination.

One excerpt in particular demonstrates the conjectural and hypothetical nature of Karlson's testimony. When asked to describe how LeBlanc's discrimination frustrated ACORN's mission, Karlson said:

> Again, all I can do is base this on the mission of the organization being frustrated over two and a half years in trying to resolve this particular complaint to the extent that this one complaint started to take over an inordinate amount of our work time and staff time of our normal activities, really takes away from our activities in other areas, being able to do outreach and education, research and monitoring, intakes and investigations of complaints. It takes away from our normal activities - and this particular case has. My estimate is 96 and a half hours of our staff time, over two and a half years, and that's conservative. If I kept time sheets, probably much larger than that, but we did not.
>
> But in terms of frustration of mission, our mission after we resolved the complaint, we have to make up for all that lost ground and all that lost time. And I can't sit here and give you and exact amount for what that is, but we have to go back out and repair the damage that's been done, because the discrimination in this case is continuing and ongoing. That's why we're in court, trying to seek relief to get that to stop and to stop it from happening in the future. So, to the extent that we can do that through frustration of mission, we have to go back and redouble our efforts in the community to make up for that lost ground that was taken away from us during the course of this particular complaint and to help heal some of the damage in the community. I don't know if I can really explain it much more than that. (Tr. at 88-89).

None of ACORN's testimony at trial demonstrates a concrete and particularized injury as required by Lujan; instead, as the Supreme Court cautioned in Lujan, ACORN's injury based on the testimony at trial is only conjectural, hypothetical and speculative.

16

Therefore, we find that ACORN lacks standing to bring suit and reverse and vacate the jury's compensatory award to ACORN. In addition, because ACORN lacks standing, we conclude that ACORN is not longer a "prevailing party" pursuant to 42 U.S.C. § 3613(c) of the Federal Fair Housing Act. We also reverse and vacate the district court's award of $10,000 in attorney's fees to ACORN.

CONCLUSION

We reverse and vacate the district court's punitive damages award to Lewis, and the compensatory damages award and attorney's fees award to ACORN. In all other respects we affirm.

AFFIRMED IN PART, REVERSED AND VACATED IN PART.

KING, Chief Judge, concurring in part and dissenting in part:

Judge Duhé has written a careful and thorough opinion, and I concur in Part IIB of the opinion and its holding regarding ACORN's standing. While I agree fully with the description in Part IIA of the opinion of the legal landscape on the award of punitive damages, I cannot agree with its conclusion, and I would affirm Lewis' punitive damage award. As Judge Easterbrook said in declining to read a compensatory-punitive link into § 1981a or Title VII when no such link had been read into § 1983, "[e]xtra-statutory requirements for recovery should not be invented." Timm v. Progressive Steel Treating, *Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998). I can see no justification for inventing such a requirement for the FHA.

As the majority acknowledges, punitive damages are a very important part of the FHA's goal of eradicating discriminatory practices. "Punitive damages are awarded in the jury's discretion 'to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future.'" Smith v. Wade, 461 U.S. 30, 54 (1983) (quoting RESTATEMENT (SECOND) OF TORTS § 908(1) (1977)). The jury in this case clearly believed that the defendant had engaged in behavior that warranted a punitive award. Indeed, the behavior exhibited by this defendant has been unlawful for thirty years and is reminiscent of the blatant violations

18

challenged shortly after the Act became effective.  And yet, he emerges from this case with no financial disincentive to continue his practices.  Nor are other landlords in the community hereby discouraged from engaging in similar practices.

I see no language in the Act dictating the majority's conclusion and I find it unfaithful to the FHA's purposes.  I also see it as providing a basis for similar conclusions in other contexts, thereby threatening the fulfillment of other civil rights acts' goals.  For these reasons, I respectfully dissent.