**Kathryn Davis MATTHEWS,
Plaintiff-Appellee,**

v.

**A–1, INC., Defendant-Appellant.**

**Nos. 84–1385, 84–1670.**

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1984.

Vial, Hamilton, Koch, Tubb & Knox, James H. Baumgartner, Jr., Dallas, Tex., for defendant-appellant.

Hoffman & Wheeler, Betty Wheeler, Amarillo, Tex., for plaintiff-appellee.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Kathryn Davis Matthews was awarded back pay and attorneys' fees in a sex discrimination action brought against her former employer, A–1, Inc. under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* On appeal, the employer has challenged the finding of discrimination and the district court's calculation of damages as to the requisite adjustment for interim earnings under 42 U.S.C. § 2000e–5(g). Finding no error in the district court's determination, we affirm.

## FACTS

Kathryn Davis Matthews was hired on November 18, 1980, by A–1, Inc., a mobile home sales company, as a sales associate in the Lubbock, Texas, office. She was the only female sales associate in the office. She was discharged from her position on July 11, 1981, for (1) violating company policy prohibiting "moonlighting" and (2) tardiness and absenteeism. Her "moonlighting" activity was selling Mary Kay cosmetics. Although there were no documented instances of tardiness and absenteeism in her file, at trial A–1's manager, Wayne Swinney, was able to recall three instances: (1) when her mother was ill, (2) when she went to the hairdresser, and (3) when she had car trouble.

The male sales associates in the office were treated differently both while employed and as to discharge: (1) male associates with tardiness and absenteeism problems were counseled about them and in some instances formal documentation concerning the problems were placed in their files; (2) male associates were permitted to leave the lot on personal errands and to go to the barbershop; (3) two of the male associates engaged in some "moonlighting" activity, even on company time; (4) rather than being discharged for "moonlighting," the male employees were given an exemption from the company rule; and (5) no male employees were terminated for tardiness and absenteeism unless there was also a problem with their productivity.[1]

The district court, after a bench trial, found that Matthews' termination constituted sex discrimination[2] and awarded her $4,203.39 for lost back wages and $6,000 for attorneys' fees.

## ANALYSIS

### (1) Finding of Discrimination

A–1 argues that the district court erred as a matter of law by relying on a non-material fact, *i.e.*, the sexual harassment of Matthews by A–1's manager Swinney, in reaching its finding of discrimination, and that the finding of discrimination was clearly erroneous.

#### a. Sexual Harassment

The district court did find that Swinney made sexual advances to Matthews when he required her to work alone with him in the office late at night. *See* note 2, *supra.* The court, however, clearly and unequivocally stated that it considered the sexual harassment only as relevant background evidence and that no recovery could be based on this factor because it was not included in the E.E.O.C. charge. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 554–55, 97 S.Ct. 1885, 1887, 52 L.Ed.2d 571 (1977); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460–67 (5th Cir.1970). "[T]he filing of a charge of discrimination with the EEOC is a condition precedent to the bringing of a civil action under Title VII." *San-*

---

1. There was no allegation of lack of productivity by Matthews in the reasons given for her discharge.

2. The court also noted in its findings that although the case did not specifically involve sex-

ual harassment, only Matthews was requested to work late alone in the office with Swinney, and that Swinney used the "midnight conferences" as opportunities for sexual advances.

*chez,* 431 F.2d at 460. While technical omissions of legal theories from the E.E. O.C. charge do not preclude a plaintiff from including those theories in the Title VII complaint, in such a case the *acts* upon which those theories are based must be noted in the charge. *Id.* at 462, 464–67. The district court did not consider the sexual harassment acts that were not mentioned in the charge as within the scope of this civil action and Matthews has not alleged that the court erred in excluding those acts as a basis for recovery or that the theory of sex discrimination encompasses sexual harassment. Therefore, A–1's contentions that the district court gave only token acknowledgement to the requirement that a discriminatory act be timely raised in an E.E.O.C. charge to present a claim in a subsequent suit are completely without merit.

As to A–1's contention that the district court's taking notice of the presence of sexual harassment in Matthews' employment situation "unquestionably, and impermissibly, colored its judgment, resulting in a clearly erroneous ultimate finding of discrimination," no supporting facts or argument are presented on appeal except for one quote from the court's order denying A–1's motion for reconsideration. The complete quoted sentence reads: "The court, after hearing all the evidence and judging the credibility of the witnesses, found that defendant's termination of plaintiff was for impermissible sexually motivated reasons and that the supposedly legitimate causes advanced by defendant were pretextual." Even if A–1 means to argue that the court's use of the word "sexually"[3] necessarily referred to the harassment acts rather than being merely the grammatically correct usage of an adverb as a modifier[4] in the context of the sentence, the argument has no merit. The district court's opinion, as noted previously, clearly indicates that the acts of sexual harassment were not the basis of the

court's finding of discrimination based on sex. The opinion also specifies in detail the various ways in which the employer treated male and female employees differently that did provide the basis for the determination.

### b. Clearly Erroneous Argument

█ Although the factual inquiry in this case is simply "whether the defendant intentionally discriminated against the plaintiff," there are two ways in which a plaintiff may succeed in carrying the burden of persuasion on discriminatory intent: "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *United States Postal Serv. Board of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410–11 (1983) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). In this case, the district court found A–1's reasons for discharging Matthews to be pretextual. A–1 concedes on appeal that the court's findings concerning tardiness and absenteeism were not clearly erroneous. It challenges only the court's findings as to "moonlighting."

The district court found that a male employee, Mr. Wood, had engaged in some "moonlighting" activities (the retention of an automobile dealership license), but that they did not "rise to the level of a day-to-day business involvement," and that he was allowed to resign for other reasons. However, as to another employee, Mr. Kallerman, the court found that he kept the books for his mobile home rental enterprise on company time and was granted an exemption from company policy after being given an opportunity to explain his "moonlighting" business. In contrast, the court found that Matthews "was terminated immediately on the day [manager] Swinney learned of her cosmetic sales." She was

---

**3.** A–1 actually misquotes the word as "sexual."

**4.** That "sex" is commonly used to modify "discrimination" does not lead to the conclusion

that the use of "sexually motivated reasons" is a reference to sexual harassment.

"not afforded an opportunity to divest herself of any interest, nor was an exemption sought on her behalf." Swinney had sought the exemption for Mr. Kallerman from A–1's owner.

A–1 argues that the court ignored the prior approval given to Wood and Kallerman to engage in their outside activities and that Matthews was fired for engaging in her "moonlighting" activities surreptitiously. Matthews argues that the very fact that Swinney sought to accommodate the "moonlighting" activities of the two men while viewing her cosmetic sales as an unquestionable violation of company policy is evidence of sex discrimination. In *Chescheir v. Liberty Mutual Ins. Co.*, 713 F.2d 1142 (5th Cir.1983), this Court upheld a finding that an employer applied its "law school" rule differently to male and female employees. *Id.* at 1149. Women who violated the rule (by attending law school) were immediately discharged and potential violators were investigated promptly while no male employees were discharged because of the "law school" rule and those suspected of it were not investigated. *Id. Chescheir* supports Matthews' interpretation of the finding that A–1's "moonlighting" policy was discriminatorily applied. *Id.* at 1150; *see E.E.O.C. v. Brown & Root, Inc.*, 688 F.2d 338, 340 (5th Cir.1982). The challenged findings as to "moonlighting" are not clearly erroneous.

### (2) Interim Earnings

■ A–1 also argues that the court's calculation of damages violated the following provision of 42 U.S.C. § 2000e–5(g): "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." Matthews had been earning a minimum monthly draw of $2,000 while at A–1. Less than two months after her discharge, she obtained employment with another mobile home sales office where she averaged $1,881.22 in commissions per month over a seven-month period. The district court deducted these interim earnings from her damage award. However, Matthews left her new job in Lubbock and moved to Amarillo after marrying and remained unemployed for three months. She then obtained employment at which she earned an average of $2,910.32 per month. The court construed her damages to cease when she began earning wages in excess of what she had received at A–1.[5]

Relying on *Merriweather v. Hercules, Inc.*, 631 F.2d 1161 (5th Cir.1980), A–1 argues that the damage award must be reduced by *any* earnings, including those at the higher paying job in Amarillo. However, *Merriweather* is inapposite in that it holds that interim earnings need not be from employment similar in nature to that discharged from, but must include all earnings acquired during the interim *period* from any type of work obtained. *Id.* at 1168. A–1 also relies on *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). *Ford* is even less applicable to the present facts, holding that a "claimant's statutory obligation to minimize damages requires him to accept an unconditional offer of the job originally sought." *Id.* at 234, 102 S.Ct. at 3067. The actual obligation to mitigate damages is well-established and not in dispute. Nothing in *Ford* obligates the court to extend the period for calculating damages past the time of acceptance of a higher-paying position. As Matthews correctly argues, the relevant question is whether the district court properly determined the interim period. "The determination of the back pay period is a factual matter to be set aside only when clearly erroneous." *Ches-*

5. The court actually found the interim period to end on March 31, 1982, when Matthews resigned from the position at which she was earning $1,881.22 per month to move to Amarillo with her husband. The court also did not award any damages for the three months after her voluntary relocation. While the court's reasoning focuses on the cessation of damages at the time Matthews began to earn a higher income, the court would also have been correct in finding the interim period to have ended when Matthews resigned from her position at Lubbock because of her marriage. *See Di Salvo v. Chamber of Commerce of Greater Kansas City,* 568 F.2d 593, 598 (8th Cir.1978).

*cheir v. Liberty Mutual Ins. Co.*, 713 F.2d at 1150 (5th Cir.1983). Other courts have found that a claim for back pay ceases when the claimant begins to earn more than she had been earning with the defendant employer. *See, e.g., Di Salvo v. Chamber of Commerce*, 568 F.2d at 598; *Somers v. Aldine Indep. School Dist.*, 464 F.Supp. 900, 903 (S.D.Tex.1979), *aff'd* 620 F.2d 298 (5th Cir.1980). The district court, in this case, properly refused to deduct Matthews' earnings at a higher paying position from her damage award.

The issues in this case having been joined, the evidence having been adduced, and the district court having made findings that are supported by the record and proper conclusions of law, the judgment entered is AFFIRMED.