**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 1, 2007**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-30712

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff - Appellee,

versus

E.I. DU PONT DE NEMOURS & CO, doing business as
DuPont Specialty Chemicals,

Defendant - Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:03-CV-1605

Before JONES, Chief Judge, and REAVLEY and PRADO, Circuit Judges.

EDITH H. JONES, Chief Judge:

E.I. DuPont de Nemours and Company ("DuPont") appeals the partial grant of summary judgment to the EEOC and its refusal to alter the judgment following a jury verdict awarding Laura Barrios backpay, frontpay, and punitive damages for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. DuPont argues that Barrios was not disabled under the ADA, that it did not "regard her" as disabled, that she could not perform an essential function of her job, and that the awards of punitive damages and front- and backpay were inappropriate. Finding only the frontpay award to be infirm, we AFFIRM in part and REVERSE in part.

## I.  BACKGROUND

Laura Barrios began working in 1981 as a lab operator in DuPont's LaPlace, Louisiana, chemical plant.  In 1986, she was diagnosed with a number of medical conditions that made it increasingly difficult for her to walk and for which she received continuing medical treatment.

Barrios's position required her to obtain annual physical examinations by DuPont plant physicians.  In 1996, the company physicians restricted Barrios from, inter alia, standing for more than ten minutes, walking more than one hundred feet without resting, working in a stooped position, or working more than eight hours.  A year later, DuPont transferred her to the position of lab clerk, a sedentary job that involved copying and filing.

DuPont's examinations culminated in a 1999 functional capacity evaluation ("FCE") because of concerns about Barrios's ability to safely walk at the plant.  The FCE was intended to evaluate Barrios's ability to perform the basic functions of her job and to meet certain qualification standards, including the ability to evacuate in the event of an emergency.  Because of the hazardous nature of the chemical manufacturing process at the plant, DuPont was concerned about Barrios's ability to evacuate safely.  DuPont contends that the ability to evacuate during an emergency is required of all employees, and DuPont routinely conducts emergency response drills.

2

After the FCE confirmed Barrios's walking impairment, DuPont physicians concluded that she should be medically restricted from walking anywhere at the plant. DuPont believed this restriction left her unable to evacuate in event of an emergency. The company placed Barrios on temporary disability for six months and total and permanent disability thereafter. Barrios's attempt to get her job back was rebuffed by Dupont, even though she demonstrated in 2003 that she could walk an evacuation route without assistance.

The EEOC filed suit against DuPont in June 2003, alleging that DuPont violated the ADA by forcing Barrios to undergo the FCE and by discharging her. DuPont responded that Barrios was terminated because the FCE showed she could not safely evacuate the plant on her own during an emergency. After both parties filed cross-motions for summary judgment, the district court granted the EEOC's motion in part and denied DuPont's motion. The court found that DuPont regarded Barrios as disabled under the ADA, but it found other material issues of fact.

The parties proceeded to trial, and a jury found that Barrios was discharged in violation of the ADA and awarded her $91,000 in backpay, $200,000 in frontpay, and $1,000,000 in punitive damages, which the district court reduced to $300,000.[1]

---

[1]     See 42 U.S.C. § 1981a(b)(3)(D).

3

The court denied DuPont's post-judgment motions. DuPont now appeals.

## II. DISCUSSION

DuPont argues that the district court erred in granting partial summary judgment to the EEOC and in denying its motions for judgment as a matter of law, new trial, and to amend or alter the judgment because Barrios was not disabled or "regarded as" disabled under the ADA; the awards of back- and frontpay are improper; and the punitive damages award was unsupported. We address each issue in turn.

### A. Disability

DuPont appeals both the district court's grant of partial summary judgment to the EEOC on the issue whether DuPont regarded Barrios as substantially limited in the major life activity of walking and the court's failure to determine as a matter of law that Barrios was not disabled. Because the EEOC does not defend the jury's finding that Barrios was actually disabled for ADA purposes, this appellate review must consider whether to sustain the judgment solely on the basis that DuPont regarded Barrios as disabled.

This court reviews <u>de novo</u> the district court's grant of summary judgment, utilizing the same criteria as the district court. <u>Cutrera v. Bd. of Supervisors of La. State Univ.</u>, 429 F.3d

4

108, 110 (5th Cir. 2005). DuPont will prevail if the evidence demonstrated a genuine issue of material fact.

The ADA's definition of "disability" includes individuals who are "regarded as having such an impairment [that substantially limits one or more of the major life activities]." 42 U.S.C. § 12102(2)(C); see also Rodriquez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 475 (5th Cir. 2006). A plaintiff is "regarded as" being disabled if he "(1) has an impairment that is not substantially limiting but which the employer perceives as substantially limiting, (2) has an impairment that is substantially limiting only because of the attitudes of others, or (3) has no impairment but is perceived by the employer as having a substantially limiting impairment." Waldrip v. Gen. Elec. Co., 325 F.3d 652, 657 (5th Cir. 2003) (citing Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 508 (5th Cir. 2003)); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S. Ct. 2139, 2149-50 (1999).

In holding that DuPont regarded Barrios as disabled, the district court relied upon the broad restrictions placed on her by DuPont physicians, the total and permanent disability benefits provided to her with DuPont's assistance, and DuPont's pleadings and discovery responses. DuPont admitted in its discovery responses that Barrios was "incapable of walking" and "permanently disabled from walking." DuPont plant physicians placed restrictions on her walking anywhere at the plant site, including

5

on level and paved surfaces, because they considered her "substantially impaired in walking" and because she "could not dependably be counted on to walk safely." The district court cited a large quantity of evidence consistent with its conclusion.

In response, DuPont argues that, rather than having regarded Barrios as entirely disabled from the major life activity of walking, it regarded her as having a medical restriction that prevented her from walking at the plant. Two of this court's decisions, Ray v. Glidden Co., 85 F.3d 227 (5th Cir. 1996), and Pryor v. Trane Co., 138 F.3d 1024 (5th Cir. 1998), are representative of a long line of cases holding that an employer may regard an employee as impaired or restricted from one position or a narrow range of jobs without regarding him as "disabled."[2] Ray held that restrictions on heavy lifting did not establish a record of disability or a "regarded as" disability because the inability to perform heavy lifting did not render the employee "substantially limited in the major activities of lifting or working." 85 F.3d at 229. Similarly, in Pryor, the employee could not be regarded as disabled because her work restrictions were limited only to a particular job and not an entire class of jobs. 138 F.3d at 1028.

DuPont's reliance upon Ray and Pryor is misplaced. The evidence demonstrates that DuPont did not regard Barrios as

_____

[2]    See, e.g., Blanks v. Sw. Bell Commc'ns, Inc., 310 F.3d 398, 402 (5th Cir. 2002); Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1025 (5th Cir. 1999) (per curiam); Deas v. River West, L.P., 152 F.3d 471, 480-81 (5th Cir. 1998); Bridges v. City of Bossier, 92 F.3d 329, 334-36 (5th Cir. 1996).

6

restricted from a narrow range of jobs; rather, DuPont regarded Barrios as restricted from <u>all</u> jobs at the plant, because every employment position requires walking on the plant site. Moreover, DuPont's perception of Barrios's walking impairment was not limited to the plant — Dupont physicians believed her impairment extended to "home, at work, wherever." If company experts believed Barrios could not walk safely even in her own work area, which consisted of level, flat surfaces, then DuPont must also have believed she could not safely walk anywhere. <u>See</u> <u>Rodriguez</u>, 436 F.3d at 477. DuPont was unable to offer evidence that created a genuine issue of material fact that its experts' perceptions of the work restrictions might have been limited to Barrios's ability to walk in her particular position as a lab clerk or only at the DuPont plant.

Therefore, for ADA purposes, DuPont regarded Barrios as substantially limited in the major life activity of walking. <u>See</u> 29 C.F.R § 1630.2(j)(1)(i) (stating that "substantially limits" means "[u]nable to perform a major life activity that the average person in the general population can perform"); <u>Talk v. Delta Airlines, Inc.</u>, 165 F.3d 1021, 1024-25 (5th Cir. 1999) (per curiam) (noting that walking is a major life activity); <u>see also</u> <u>EEOC v. Sears, Roebuck & Co.</u>, 417 F.3d 789, 802 (7th Cir. 2005) (holding that a "severe difficulty in walking the equivalent of one city block was a substantial limitation compared to the walking most

7

people do daily"). The district court properly granted summary judgment that Barrios was "regarded as" disabled.

## B. Sufficiency of Evidence

DuPont next contends that ADA liability cannot attach as a matter of law because Barrios was not qualified for the position of lab clerk, she could not perform the essential function of evacuation, and she constituted a direct safety threat to herself and others. The jury implicitly found otherwise.

DuPont cannot prevail in seeking judgment as a matter of law "unless there is no legally sufficient evidentiary basis for a reasonable jury['s] verdict." Arsement v. Spinnaker Exploration Co., 400 F.3d 238, 248-49 (5th Cir. 2005) (quoting FED. R. CIV. P. 50(a)(1)).[3]

The ADA states that a qualified individual with a disability is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Rodriguez, 436 F.3d at 474 (emphasis added) (quoting 42 U.S.C. § 12111(8)). Essential functions are the fundamental duties of the job at issue and do not include the job's "marginal functions." Kapche v. City of San Antonio, 176 F.3d 840, 843 (5th Cir. 1999) (citing 29 C.F.R.

---

[3] Because DuPont's briefs argue only for reversal of the judgment, the company has failed sufficiently to brief and thus waived any claim to a new trial. Another point of confusion is that DuPont argues that the jury was "clearly wrong" in its verdict. Clear error is not the standard for judgment as a matter of law, but we assume that DuPont's argument is meant to be internally consistent.

8

§ 1630.2(n)(1)).  When considering whether a function is essential, a court may hear a variety of evidence, including "(1) the employer's judgment as to which functions are essential, (2) written job descriptions prepared before advertising or interviewing applicants for the job, (3) the amount of time spent on the job performing the function, and (4) the work experience of both past and current employees in the job."  Id. (citing 29 C.F.R. § 1630.2(n)(3)(i)-(vii)).  Appellate review of the jury's determination of the essential functions of Barrios's job is highly deferential.  See Barber v. Nabors Drilling U.S.A., Inc., 130 F.3d 702, 707 (5th Cir. 1997).

DuPont asserted that Barrios was incapable of evacuating from the plant in an emergency and that evacuation is an essential function of all workers at a chemical refinery.  We do not doubt that safety measures are extremely important in such workplaces.  Nevertheless, Barrios and the EEOC offered contradictory evidence on DuPont's precise points, and the jury was entitled to decide whether to credit Barrios or DuPont.  We will not disturb its choice.

DuPont also asserts as an affirmative defense that Barrios posed a direct threat to herself and other employees because she could not safely evacuate.  See 42 U.S.C. § 12113(a)-(b).  The ADA does not protect an employee who poses a direct threat to the health and safety of herself or others in the workplace.  Robertson v. Neuromedical Ctr., 161 F.3d 292, 296 (5th

9

Cir. 1998) (per curiam). A direct threat is a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). The employer must make an "individualized assessment of the individual's present ability to safely perform the essential function of the job." Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 86, 122 S. Ct. 2045, 2053 (2002) (quoting 29 C.F.R. § 1630.2(r)); see also Rodriguez, 436 F.3d at 484; Kapche, 304 F.3d at 498.

Here, too, there was sufficient evidence for a reasonable jury to conclude that Barrios was not a direct threat to herself or her co-workers. Despite her medical restriction from walking, Barrios safely ambulated the evacuation route without assistance in 2003, and testimony at trial supported that she could safely evacuate without threatening the safety of others. See Rizzo v. Children's World Learning Ctrs., Inc., 213 F.3d 209, 213 (5th Cir. 2000) (en banc) (driver of child care van with hearing impairment not a direct threat); cf. Gonzales v. City of New Braunfels, 176 F.3d 834, 838 (5th Cir. 1999) (police officer driving a cruiser "with insulin-dependent diabetes poses a direct threat to the health and safety of others as a matter of law"). The district court did not err in denying DuPont's motion for judgment as a matter of law.

**C.  Back- and Frontpay Damages**

10

The jury awarded $91,000 backpay from the date of Barrios's separation, July 1999, to the date of judgment in January 2005, and the court awarded frontpay of $200,000, premised on Barrios's ability to work until she became sixty-five and on the infeasibility of reinstatement at DuPont. DuPont challenges both awards.

The jury's determination of the backpay period in this case was not insupportable. See Brunnemann v. Terra Int'l, Inc., 975 F.2d 175, 178 n.5 (5th Cir. 1992) ("the determination of back pay period is a factual matter to be set aside only when clearly erroneous" (citing Matthews v. A-1, Inc., 748 F.2d 975, 978 (5th Cir. 1984))). Although Dr. Montegut, Barrios's physician, testified that Barrios was medically unable to work after June 2001, the jury could have relied upon testimony that Barrios had a high pain threshold and could have worked after that date. The jury was in a better position than this court to weigh the evidence concerning the proper date to cut off backpay. See id. Further, assessing the backpay at the modest amount of approximately $20,000 per year over a five-year period was not improper.[4]

The same cannot be said of the district court's award of frontpay, which was based on an advisory jury verdict. See Julian v. City of Houston, 314 F.3d 721, 728 n.25 (5th Cir. 2002) (district court may determine frontpay with the assistance of an

---

[4] The backpay award was adjusted for the amount of disability compensation Barrios received from DuPont during this period.

11

advisory jury).  We review the district court's award of frontpay for abuse of discretion.  Id. at 728; see also Giles v. Gen. Elec. Co., 245 F.3d 474, 489 (5th Cir. 2001).

"Front pay is awarded to compensate the plaintiff for lost future wages and benefits."  Rutherford v. Harris County, 197 F.3d 173, 188 (5th Cir. 1999) (quoting Shirley v. Chrysler First, Inc., 970 F.2d 39, 44 (5th Cir. 1992)).  Although reinstatement is preferred, frontpay may be awarded if reinstatement is not feasible.  Id.[5]  The key issue before this court is "whether the district court adequately explained why it awarded front pay."  Id.

The district court concluded that Barrios was likely to have continued working for DuPont despite her walking impairment. This conclusion was based on testimony that Barrios was hard-working, committed, and had a "high tolerance for pain."  Given Barrios's steadily deteriorating medical condition, however, her doctor's repeated statements as time went on that she remained unable to work, and the fact that the trial occurred more than three years after her doctor's first disability determination and five years after the adverse FCE, the court's finding that Barrios could work for nearly ten more years post-judgment defies reality and the record.  As she was unable to work in the future, Barrios was not eligible to receive "future wages and benefits."  See,

---

[5]     DuPont also challenges the district court's finding that reinstatement was infeasible; however, because the district court's award of frontpay was an abuse of discretion, we do not address this argument.

12

e.g., McInnis v. Fairfield Cmtys., Inc., 458 F.3d 1129, 1146 (10th Cir. 2006) (frontpay award must not grant plaintiff a windfall). Although the jury's determination of the backpay period was not clearly erroneous, the district court's award of frontpay was an abuse of discretion. Only the backpay award can stand.

### D. Punitive Damages

Finally, DuPont challenges the award of punitive damages. It argues that there was no evidence of malice or reckless indifference and that punitive damages are unavailable as a matter of law absent a finding of compensatory damages.

A plaintiff may recover punitive damages if the defendant acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The availability of punitive damages turns on the defendant's state of mind, not the nature of the defendant's egregious conduct. Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535, 119 S. Ct. 2118, 2124 (1999). The employer "must at least discriminate in the face of a perceived risk that its actions will violate" the ADA. Id. at 536, 119 S. Ct. at 2125. Moreover, the plaintiff must show that the "malfeasing agent served in a 'managerial capacity' and committed the wrong while 'acting in the scope of employment.'" Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 405 (5th Cir. 2000) (citing Kolstad, 527 U.S. at 541, 119 S. Ct. at 2127). However, under the good-faith excep-

13

tion, "an employer may not be vicariously liable for the discriminatory employment decision of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." Id. (citing Kolstad, 527 U.S. at 545, 119 S. Ct. at 2129) (internal quotation marks omitted).

There was sufficient, albeit disputed, evidence to support the jury finding that DuPont intentionally discriminated against Barrios with malice or with reckless disregard for her rights. DuPont was aware of its responsibilities under the ADA. Yet, viewed in the light most favorable to the verdict, DuPont made Barrios's job more difficult. The company placed Barrios's printer over one hundred feet from her desk in spite of her walking difficulties, whereas other lab clerks' printers were adjacent to their desks. DuPont refused to allow Barrios to demonstrate her ability to evacuate before she was terminated — for inability to evacuate. The company spent years trying to convince Barrios to retire on disability. But the crowning evidentiary blow against DuPont is that after Barrios attempted to get her job back, a DuPont supervisor stated that he no longer wanted to see her "crippled crooked self, going down the hall hugging the walls." The supervisor's denial of this remark under oath, like DuPont's rejoinder to other negative evidence, was subject to the jury's credibility assessment. The jury likewise could have rejected DuPont's good-faith defense based on the conclusory assertions by two DuPont employees that they comply with the law. Cf. Hatley v.

14

<u>Hilton Hotels Corp.</u>, 308 F.3d 473, 477 (5th Cir. 2002) (employer's well-publicized policies, training, grievance procedure, and investigation of plaintiff's complaint were sufficient to sustain good-faith defense).

DuPont alternatively contends that the punitive damages award was impermissible in the absence of compensatory damages; front- and backpay awards are "equitable" remedies, rather than compensatory. Whether this is a correct interpretation of 42 U.S.C. § 1981a is an issue of first impression in our court. We review this legal question <u>de</u> <u>novo</u>. <u>La. ACORN Fair Housing v. LeBlanc</u>, 211 F.3d 298, 301 (5th Cir. 2000), <u>cert.</u> <u>denied</u>, 532 U.S. 904, 121 S. Ct. 1225 (2001).

The analysis begins with the text of the statute. <u>Doe v. KPMG, LLP</u>, 398 F.3d 686, 688 (5th Cir. 2005). Section 1981a(b)(1) authorizes punitive damages if the defendant acts "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Because subsection (b)(2) states that "[c]ompensatory damages awarded under this section shall not include backpay," DuPont contends that backpay is excluded from compensatory damages. As the district court correctly noted, however, nothing in the text of the statute limits an award of punitive damages to cases in which the plaintiff also receives compensatory damages. <u>See</u> <u>Hennessy v. Penril Datacomm Networks, Inc.</u>, 69 F.3d 1344, 1352 (7th Cir. 1995); <u>see also</u> <u>Corti v. Storage Tech. Corp.</u>, 304 F.3d 336, 342 (4th Cir. 2002). Other courts of

15

appeals have uniformly rejected DuPont's assertion and have held that an award of wage loss alone can sustain a statutory award of punitive damages.[6]

DuPont relies upon LeBlanc to support its argument that the "equitable" awards of front- and backpay are insufficient to sustain an award of punitive damages. See 211 F.3d 298, 301 (5th Cir. 2000). In a Fair Housing Act case in which no compensatory damages were awarded for a statutory violation, this court disallowed a punitive damages award absent an award of actual damages or a constitutional violation. Id. at 303 & n.3. DuPont asserted at oral argument that LeBlanc covered all civil rights cases in this circuit.

Although LeBlanc surveyed the landscape concerning punitive damages under various statutes and around the circuits, the case ultimately ruled on their availability (a) under the Fair Housing Act and (b) in a case where no compensatory damages of any sort were awarded. Under Section 1981a, back- and frontpay awards serve a compensatory function, leading courts to conclude that a

---

[6] See Tisdale v. Fed. Express Corp., 415 F.3d 516, 534 (6th Cir. 2005) ("Because backpay awards under Title VII serve a similar purpose as compensatory damages awards under the common law, courts have held they may be considered in determining the appropriate size of a punitive damages award."); Salitros v. Chrysler Corp., 306 F.3d 562, 575 (8th Cir. 2002) (award of frontpay is sufficient to sustain the punitive damage award because "the common law policy prohibiting punitive damages where the plaintiff has not shown any harm is not implicated where the plaintiff has shown wage loss"); EEOC v. W&O, Inc., 213 F.3d 600, 615 (11th Cir. 2000) ("punitive damages may be appropriate where a plaintiff has received back pay but no compensatory damages"). Although we need not and do not decide or endorse their position, two courts of appeals have even upheld punitive damage awards in the absence of either compensatory damages or backpay. Cush-Crawford v. Adchem Corp., 271 F.3d 352, 359 (2d Cir. 2001); Timm v. Progressive Steel Treating, Inc., 137 F.3d 1008, 1010 (7th Cir. 1998).

16

Fair Housing Act case is not analogous.  See Corti, 304 F.3d at 343.  Moreover, Barrios's backpay award was issued precisely to remedy her wage loss following illegal termination by DuPont. LeBlanc is thus distinguishable on both the law and the facts. DuPont also overlooks that in Rubinstein v. Administrators of the Tulane Educational Fund, 218 F.3d 392, 407 (5th Cir. 2000), this court sustained a punitive damages award where the plaintiff received only compensation damages for lost wages.  Consequently, we do not find persuasive DuPont's attempt to characterize wage loss as an exclusively equitable remedy that is insufficient to support an award of punitive damages.  See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210, 218 n.4, 122 S. Ct. 708, 712, 717 n.4 (2002).

### III.  CONCLUSION

For the reasons discussed above, we AFFIRM liability and the awards of backpay and punitive damages but REVERSE the award of frontpay.

**AFFIRMED IN PART, REVERSED IN PART.**

17