United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2007

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

m 06-10871
Summary Calendar

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff-Appellant,

VERSUS

STOCKS, INC.,
DOING BUSINESS AS CAFE ITALIA AND CIA CHOW INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
m 3:04-CV-2109

Before SMITH, WIENER, and OWEN,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

After the Equal Employment Opportunity Commission ("EEOC") filed a complaint, a jury found that Stocks, Inc., doing business as Café Italia and Cia Chow Inc. ("Café Italia"), had unlawfully retaliated against a waitress in violation of title VII, and awarded compensatory damages. The EEOC appealed, claiming that the district court should have submitted a punitive damages instruction to the jury.[1] Because the EEOC presented sufficient evidence

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Although Cafe Italia cross-appealed, it withdrew that cross-appeal; its counsel has withdrawn; and it declined to file an appellee's brief.

to survive a judgment as a matter of law on the issue of punitive damages, we reverse and remand.

## I.

Ashley Bridges was a waitress at Cafe Italia for seven months. After working there a few weeks, she began receiving inappropriate sexual comments and physical contact from Julio Cabrera, a 25% owner of the restaurant and a fellow waiter. The inappropriate conduct continued throughout her employment.

Bridges frequently told Cabrera she did not appreciate the conduct and requested that he stop. She complained to the general manager, Dino Pucci, and the assistant manager, Tony Lemus. Despite her complaints, the conduct continued. Café Italia did not have a written sexual harassment policy.

In November, Bridges intervened in an argument between a server she was dating and Cabrera. According to Bridges, she told Cabrera that she could not stand working with him because of his harassing behavior. According to Cabrera, Bridges said that if Cabrera did not back off, she would sue the restaurant for sexual harassment. Bridges denied making that threat.

Shortly after this altercation, Bridges's shifts were significantly reduced. Pucci and Lemus told her that her shifts were being cut because of her threats against the restaurant to bring sexual harassment charges. The majority owner of the restaurant, Scott Jones, testified that he had decided to reduce her shifts because "it was reported to me that she said if you fire Alex I will sue you for sexual harassment. . . . [T]hat's extortion. . . . She was threatening my livelihood. . . . I said put her on a one week suspension, give her one shift

that week and, you know, hopefully she will have learned her lesson."

Bridges filed a charge of sex discrimination and retaliation with the EEOC. Shortly after she left the EEOC office, she received a call from Pucci informing her that she was fired. She does not claim that Cafe Italia was aware of her filing before they fired her.

The EEOC filed a complaint alleging that Café Italia had subjected Bridges to a sexually hostile work environment and had retaliated against her in violation of title VII. The EEOC sought compensatory and punitive damages, but the district court omitted punitive damages from the final jury charge. The jury ruled in favor of Café Italia on the sexual harassment claim but found for the EEOC on the retaliation claim. It awarded compensatory damages of $10,000.

## II.

The EEOC claims it was entitled to have the jury consider an award of punitive damages. Generally, we review a jury charge and special interrogatories for abuse of discretion. *See EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1096 (5th Cir. 1994). But, where the decision as to a charge is effectively a judgment as a matter of law on an issue, we review *de novo*. *Thompson & Wallace v. Falconwood Corp.*, 100 F.3d 429, 434 (5th Cir. 1997). By failing to instruct the jury on punitive damages, the district court ruled by implication that the EEOC was not legally entitled to punitive damages; we review that ruling *de novo*.

## III.

In a title VII case, a plaintiff may recover punitive damages by demonstrating that the defendant acted "with malice or with reckless

indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a-(b)(1). The availability of punitive damages "turns on the defendant's state of mind, not on the nature of its egregious conduct."[2]

In *Kolstad*, the Court laid out the necessary evidentiary burden for a title VII plaintiff to recover punitive damages. The defendant employer "must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Kolstad*, 527 U.S. at 536. Even intentional discrimination may not meet this standard where the employer is "unaware of the relevant provision" or "discriminates with the distinct belief that its discrimination is lawful." *Id.* at 537. The plaintiff must impute liability to the defendant company through some theory of vicarious liability, *id.* at 539,[3] and must overcome the employer's good-faith exception.[4]

In this case there is no dispute that the EEOC has established vicarious liability by showing that the retaliatory actions were taken by management-level employees acting within the scope of their employment. The decision to limit Bridges's shifts was made jointly by the owners of Cafe Italia, and all the decisionmakers testified that they were aware of her allegations of harassment. There is also no dispute that Cafe Italia is not entitled to the employer's good faith exception, given that it had no anti-discrimination policies in place.[5] The only remaining issue is whether the EEOC has demonstrated malice or reckless indifference by showing that Cafe Italia retaliated in the face of a perceived risk that the retaliation would violate federal law.

The evidence showed that the decisionmakers at Café Italia had knowledge of federal anti-discrimination laws and were aware of their duty not to retaliate against an employee who brought a sexual harassment complaint. The owner, Jones, testified that he did not discipline the plaintiff after her initial complaints, because she would have gone "to the EEOC." In several of our sister circuits, evidence that the employer has knowledge of the anti-discrimination laws alone is sufficient to demonstrate reckless indifference and allow punitive damages to be submitted to the jury.[6]

---

[2] *EEOC v. E.I. du Pont de Nemours & Co.*, 2007 WL 610591, at *6 (5th Cir. Mar. 1, 2007) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)).

[3] *See also Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 405 (5th Cir. 2000) ("The employee must satisfy an additional requirement as set out in this recent articulation of the necessary showing to obtain punitive damages under Title VII: the requirement of agency.").

[4] *Kolstad*, 527 U.S. at 545 ("[A]n employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII.") (citation omitted).

[5] *See, e.g., Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 ("[Defendant's] only evidence . . . was that [it] encourages employees to contact higher management with grievances. Plainly, such evidence does not suffice to establish, as a matter of law, [defendant's] good faith in requiring its managers to obey Title VII.").

[6] *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001) (A plaintiff may satisfy its burden of demonstrating malice or reckless indifference "by demonstrating that the relevant individuals knew of or were familiar with the anti-discrimination laws and the employer's policies for
(continued...)

3

This is unlike the situation in a typical retaliation case, in that Jones did proffer an exculpatory explanation for the retaliation; he claims that Bridges threatened to bring a sexual harassment claim in an attempt to extort better treatment for a fellow employee. Where an employer "discriminates with the distinct belief that his discrimination is lawful," punitive damages are not appropriate. *See id.* at 537. Jones's testimony was disputed, however, and the jury was entitled to disbelieve his statement that he acted in response to an extortionate threat.[7]

Taking the evidence in the light most favorable to the plaintiff, the jury could have found that Cafe Italia's decisionmakers were aware of their responsibilities under title VII and acted in the face of a perceived risk that their actions would violate the statute. Therefore, a punitive damages instruction should have been given.

## IV.

The EEOC requests a new trial solely on punitive damages. We have allowed such limited trials where the issue of punitive damages is severable from the remainder of the litigation.[8] The EEOC points to employment discrimination caselaw in other circuits in which courts have remanded for trials solely on punitive damages.[9]

In the discrimination context, a jury's verdict on punitive damages is "intertwined with its view of the facts determining liability and its award for emotional injury." *Hardin*, 227 F.3d at 272. The jury's decision to award punitive damages and to set their amount is a "classic black box decision" that "responds to the evidence of intentional acts essential here to the underlying theory of liability." *Id.* Because of "the practical inseparability of the issues of intent, of damages for emotional injury, and of punitive damages," we rejected a plaintiff's request for a new trial limited to punitive damages and remanded with instruction to hold a new trial including a punitive damages instruction if "requested by the plain-

---

[6](...continued)
implementing those laws."); *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 385 (2d Cir. 2001) ("[A]cknowledgment of training in 'equal opportunity' permits an inference of the requisite mental state" for awarding of punitive damages."); *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1010 (8th Cir. 2000) ("A jury could . . . infer [the defendant] had knowledge of Title VII's proscriptions, and given this knowledge, reasonably conclude he acted in the face of a perceived risk that his actions would violate federal law.").

[7] *See, e.g., Hardin v. Caterpillar*, 227 F.3d 268, 270-71 (5th Cir. 2000) (reversing district court's refusal to issue a punitive damages instruction, noting that "if the jury credited [the plaintiff's] version of the events over those of [the defendant's] representatives, a reasonable juror could conclude that the representatives were either lying or consciously indifferent to the truth and the legality of their acts").

[8] *See Black v. Fid. & Guar. Ins. Underwriters, Inc.*, 582 F.2d 984, 991 (5th Cir. 1978) (remanding for new trial on sole issue of punitive damages in an insurance coverage case where initial damages were for property damages and loss of income).

[9] *See EEOC v. Heartway*, 466 F.3d 1156, 1171 (10th Cir. 2006). *Cf. McDonough v. City of Quincy*, 452 F.3d 8, 25 (1st Cir. 2006) (remanding to district court to make the "judgment call" whether a new trial solely on the issue of punitive damages would be fair).

4

tiff." *Id.* at 272-73.[10]

The same concerns that led us to reject a limited trial in *Hardin* are present here. The jury's compensatory award was linked not to economic lossSSthe court considered any lost wages or benefits suffered by the plaintiffSS but rather to emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-monetary losses. A future jury's decision to award punitive damages will be tied to the same evidence of intent as will be the liability decision, and the factual dispute surrounding the events leading to Bridges's suspension will be central to the decision that Café Italia retaliated in reckless indifference to her rights.

There is also a significant chance that the first jury considered the reprehensibility of Café Italia's conduct in setting its "black box" award of compensatory damages, creating a risk that a second limited trial would lead to a double recovery.[11] By our remand, we leave to the EEOC the choice of whether it wants a new trial on all issues, or wishes instead to retain its judgment.

We REVERSE the judgment and REMAND with instruction to grant a new trial on all issues, including punitive damages, if the EEOC requests a new trial. If the EEOC instead elects not to try the case a second time, the district court will enter judgment awarding general damages for retaliation in the amount of $10,000, with interest and other appropriate adjustments.

---

[10] *See also McDonough*, 452 F.3d at 24-25 (recognizing the "potential problem in remanding a case for a trial limited solely to punitive damages where the first jury awarded emotional distress damages," because of the close link between the jury's view of "the plaintiff's level of emotional trauma" and "the reprehensibility of defendant's conduct" and considering the potential risk that "the plaintiff will recover twice for the reprehensibility of the defendant's conduct").

[11] *See id.* at 24.